# District of Columbia
# Court of Appeals

**No. 13-CV-1146**

FRATERNAL ORDER OF POLICE,
METROPOLITAN POLICE LABOR COMMITTEE,

<div align="right">Appellant,</div>



F I L E D

MAY 26 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.

**CAB-8401-10**

DISTRICT OF COLUMBIA,

<div align="right">Appellee.</div>

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE:  FISHER and EASTERLY, *Associate Judges*; and NEBEKER, *Senior Judge*.

## J U D G M E N T

This case came to be heard on the transcript of record, the briefs filed, and was argued by counsel.  On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the order granting summary judgment to the District of Columbia is reversed, and the case is remanded to the Superior Court with the directive that it enter an order requiring the parties to engage in mediation before resuming litigation in this case.

<div style="margin-left:40%">

For the Court:

*[signature]*

JULIO A. CASTILLO
Clerk of the Court

</div>

Dated:  May 26, 2016.

Opinion by Associate Judge Catharine Easterly.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

FILED 5/26/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

No. 13-CV-1146

FRATERNAL ORDER OF POLICE,
METROPOLITAN POLICE LABOR COMMITTEE, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-8401-10)

(Hon. Erik P. Christian, Trial Judge)

(Argued April 21, 2015                    Decided May 26, 2016)

*Paul A. Fenn*, with whom *Barbara E. Duvall* was on the brief, for appellant.

*Jason Lederstein*, Assistant Attorney General, with whom *Irvin B. Nathan*, Attorney General at the time the brief was filed, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for appellee.

Before FISHER and EASTERLY, *Associate Judges*, and NEBEKER, *Senior Judge*.

EASTERLY, *Associate Judge*: The Fraternal Order of Police ("FOP") appeals the Superior Court's order granting summary judgment to the District based on the court's determination that the District had fulfilled its obligations to respond to FOP's Freedom of Information Act ("FOIA") request. With some dismay, we

reverse, but, before FOP and the District resume litigation in Superior Court, we direct them to engage in mediation.

## I.    Facts and Procedural History

On September 24, 2010, FOP submitted a FOIA request to both the Metropolitan Police Department ("MPD") and the Office of the Chief Technology Officer ("OCTO").   FOP requested three categories of documents "in the possession, custody and/or control" of either entity:  (1) all email sent to or from Mark Tuohey, including, but not limited to, all email sent to or from his email addresses at two law firms, Brown Rudnick LLP and Vinson & Elkins LLP, and one email address at the Washington D.C. Police Foundation; (2) all email sent to or from Eric Holder, including, but not limited to, all email sent to or from his email address at the law firm Covington & Burling LLP; (3) all email referencing or mentioning the Washington D.C. Police Foundation.  FOP stated that it sought documents from these categories generated over a four-year period, "from November 1, 2006 to present."

Three days later, the FOIA Officer at MPD, Natasha Cenatus, sent a letter to FOP in which she "acknowledge[d] the receipt of [FOP's] request," designated

"FOIA Request #100927-001." Ms. Cenatus advised FOP that the "statutory time period permitted to process [its] request begins one full workday after the receipt of [its] request."[1] Ms. Cenatus indicated, however, that there might be an "extension," either "due to the volume and extended time involved to process email searches" or because FOP's request "may have to be addressed by several divisions within the department resulting in numerous responses."[2] Ms. Cenatus concluded her letter by informing FOP that it would "receive written notice advising [it] of the availability of requested information and the cost (if any) for the search and duplication of requested materials, and how to obtain the information." That same day, Ms. Cenatus contacted OCTO about FOP's FOIA

---

[1] Ms. Cenatus appears to have been referring to D.C. Code § 2-532 (c) (2006 Repl.), which provides that "[a] public body, upon request reasonably describing any public record, shall within 15 days (except Saturdays, Sundays, and legal public holidays) of the receipt of any such request either make the requested public record accessible or notify the person making such request of its determination not to make the requested public record or any part thereof accessible and the reasons therefor."

[2] Ms. Cenatus appears to have been invoking D.C. Code § 2-532 (d) (2006 Repl.), which allows, in "unusual circumstances," "the time limit prescribed in subsection (c) of this section" to be "extended by written notice to the person making such request" for no more than ten days. "Unusual circumstances" are restricted to: "(1) The need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request;" or "(2) The need for consultation, which shall be conducted with all practicable speed, with another public body having a substantial interest in the determination of the request or among 2 or more components of a public body having substantial subject-matter interest therein." *Id.*; 1 DCMR § 405.3 (2005) (same).

request and asked it to search for variations of three names (Mark Tuohey, "Erick [sic[3]] Holder," and D.C. Police Foundation) within eight District government email accounts for MPD employees.[4]

In early October, Ms. Cenatus sent a follow-up letter to FOP, now asserting that FOP's request was "vague and overbroad" and claiming that "[a]dditional information is required to conduct an adequate search." For each category of documents, Ms. Cenatus asked for the "name of the individual e-mail boxes to search or the unit/branch/department that may be associated with this request," and invited FOP to identify the subject matter underlying its request "to assist [MPD] in determining which individual e-mail boxes would most likely contain the information [FOP] [was] seeking." Ms. Cenatus stated that "[w]ithout additional information from [FOP] addressed above, MPD will conduct a search based on [its] reasonable interpretation of [FOP's] request." She did not disclose that she had already asked OCTO to conduct searches of eight email accounts in relation to FOP's request.

---

[3] The correct spelling is "Eric."

[4] The eight District employees were Terry Ryan, Ron Harris, Cathy Lanier, Gwendolyn Crump, Nicholas Breul, Leeanne Turner, Marvin Johnson, and Teresa Quon.

In mid-October, Ms. Cenatus again wrote to FOP explaining that MPD was claiming entitlement to a ten-business-day extension pursuant to D.C. Code § 2-532 (d). Although she did not specifically cite D.C. Code § 2-532 (d)(2) (authorizing an extension in "unusual circumstances" where there is a need to consult with other agencies with "substantial interest" in the requested records, see *supra* note 2), Ms. Cenatus appeared to rely on this specific subsection, citing "unusual circumstances concerning [MPD's] need for consultation with another public body, [OCTO], which has a substantial interest in the determination of this request, as well as consultation within MPD among its Office of General Counsel and the Executive Office of the Chief of Police . . . ."[5]

The same day Ms. Cenatus wrote this letter, OCTO for the first time responded to FOP's FOIA request. Effectively disavowing a "substantial interest in the determination of [FOP's] request" under D.C. Code § 2-532 (d)(2), OCTO stated that, pursuant to Mayor's Order 2008-88, it was "require[d]" to "transfer" all FOIA requests to "the agency within the DC government that is the subject of the requested emails." OCTO explained that the subject agency was responsible for

---

[5] Ms. Cenatus expressed no concern about the scope of the search or the volume of the requested material, although these factors can independently justify a ten-day extension of the deadline for production. *See* D.C. Code § 2-532 (d)(1); *supra* note 2.

"formulating an email search request, review of results, possible redaction or withholding, and transfer of final results to the requester." OCTO then claimed that it was "unable to transfer [FOP's] request as required, or to process it in any way, because of its extreme and extraordinary breadth." OCTO stated that the request "identifie[d] no subject agency . . . and would require searching all of the approximately 39,000 email mailboxes of the District Government." OCTO thus asked FOP to "make [its] request specific enough to enable the appropriate agency or agencies to process them by identifying the email mailboxes to be searched."

On October 29, 2010, Ms. Cenatus notified FOP that MPD had processed its FOIA request. Ms. Cenatus stated that MPD had identified 1,400 pages of responsive documents and that these, along with a privilege log noting redactions (also known as a "*Vaughn* index"[6]), would be released to FOP upon payment of costs for searching and copying. Ms. Cenatus explained that an email search request was still pending with OCTO and that MPD expected a response from that agency "in approximately 90 days or by December 30, 2010."

Not having responded to any of these communications from either MPD or OCTO, FOP sued the District on November 4, 2010, for constructive denial of its

---

[6] So called after *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

FOIA request. Pursuant to D.C. Code § 2-532 (e) (2006 Repl.) and § 2-537 (a)(1), (c) (2010 Supp.), FOP sought declaratory and injunctive relief, as well as attorney's fees and costs. In its complaint, FOP acknowledged receipt of (and attached as exhibits) OCTO's one email and all of Ms. Cenatus's letters, with one exception: FOP made no mention of Ms. Cenatus's October 29 letter announcing the production of the 1,400 pages of documents that Ms. Cenatus had identified as responsive to FOP's FOIA request.[7] On November 15, 2010, Ms. Cenatus emailed FOP to inform it that this production was "still in the FOIA office." Two weeks later, in its first motion for summary judgment, FOP acknowledged this production by MPD, although it protested its adequacy and timing.

Thirteen months later, in December 2011, the District moved to dismiss FOP's suit "for lack of subject matter jurisdiction." Citing *inter alia* "D.C.M.R. § 1-402.6,"[8] the District argued that it had no obligation to respond to FOP's

---

[7] Although FOP represents in its brief to this court that it did not receive MPD's October 29 letter until sometime after November 4, 2010, there is nothing in the record to support that claim; instead, in its pleadings FOP repeatedly referred to MPD's "October 29" letter as if it had received the letter on the day it was sent.

[8] This regulation does not exist. It appears that the District meant to cite to 1 DCMR § 402.5 (2005): "Where the information supplied by the requester is not sufficient to permit the identification and location of the record by the agency without an unreasonable amount of effort, the requester shall be contacted and asked to supplement the request with the necessary information. Every reasonable

(continued…)

"overly broad" and "vague" FOIA request. Still, the District argued that it had, to the best of its ability, adequately and timely responded anyway by making *two* responsive productions: on October 29, 2010, and February 11, 2011.

In support of its motion to dismiss, the District submitted an affidavit from Ms. Cenatus describing her efforts to produce responsive documents. Ms. Cenatus preliminarily stated that "[i]t was very difficult for [her] to process this FOIA request." Regarding the requests for all emails to or from Mark Tuohey and Eric Holder, she stated that "MPD does not know which email addresses are used by Messrs. Tuohey and Holder to send and receive email," and that the "four mailboxes provided by FOP . . . did little to assist [her] understanding of FOP's request because Messrs. Tuohey and Holder may use other mailboxes in addition to these." As to the request for all emails referencing the Police Foundation, Ms. Cenatus explained that there were "no limits on its scope whatsoever."

Ms. Cenatus also indicated that she was uncertain where to search for responsive emails. Ms. Cenatus did not explain how many email accounts MPD

---

(continued…)
effort shall be made by the agency to assist in the identification and location of requested records."

possessed or why she could not search them all, but she acknowledged that she did not search every account.[9] She noted her assumption that, "[c]onsidering the ranks of the persons involved, . . . the circle where responsive emails would be circulated [was] likely fairly small."[10] She then stated that she had "commissioned email searches within MPD" of eight email accounts[11]: "Terry Ryan (General Counsel for MPD), Ron Harris (Deputy General Counsel for MPD), Cathy Lanier (Chief of Police), Gwendolyn Crump (Director of Communications), Nicholas Breul (a Lieutenant involved with the Foundation), Leeanne Turner (then-Director of Grants for the Foundation), Marvin Johnson (Manager of Grants), and Teresa Quon (Senior Assistant Attorney General Counsel for MPD – who may have been consulted for legal advice regarding the Foundation[)]."

Ms. Cenatus stated in her affidavit that as a result of these searches, she released to FOP, on October 29, 2010, 1,400 pages of responsive documents

---

[9] Ms. Cenatus "defer[red]" to OCTO's assertion that a response to FOP's request "would require searching approximately 39,000 email mailboxes," i.e., all the email accounts used by the District government.

[10] Ms. Cenatus noted that she was "aware that Mr. Holder is the Attorney General of the United States"; that Mr. Tuohey "is a private attorney who has worked for the District Council"; and that both men "used to sit on the Board" of the D.C. Police Foundation with FOP's Chairman Kristopher Baumann and Chief of Police Cathy Lanier.

[11] The identities of these eight individuals corresponded to the eight email addresses Ms. Cenatus submitted to OCTO on September 27, 2010.

together with a *Vaughn* index. Ms. Cenatus further stated that on February 11, 2011, she made a supplemental production of "16,703 additional pages of records that had been provided to [her] by OCTO" in response to her September 2010 request. She noted that "[t]o speed processing, [she] did not have the opportunity to check for the extent of redundancy with" her initial production.[12]

At the December 2011 hearing on the District's motion to dismiss, FOP protested that it never received a supplemental production of documents. Counsel for FOP further stated that, prompted by the confusion about what had actually been produced, he had only recently counted the pages picked up from MPD in response to Ms. Cenatus's October 29 letter; when he did so, he discovered that the production amounted to no more than several hundred pages.

As the Assistant Attorneys General ("AAGs") representing the District were new to the case, they could only say that MPD in its initial production had "tried to give" FOP 1,400 pages, but counsel could not say how many pages FOP had actually received. Regarding the supplemental production, the AAGs informed the

---

[12] Acknowledging that this production was "several months past the deadline," Ms. Cenatus stated that she released these documents to FOP "at no charge."

Superior Court that MPD had packaged over 16,000 pages of documents in "25 to 35 envelopes" and sent them to FOP by first-class mail, without tracking or confirmation of delivery. The AAGs could not say why MPD had not, as with the initial production, simply contacted FOP to come pick up this "very large production." The AAGs told the court they would reproduce to FOP all the documents from the District's initial and supplemental productions. The court and the parties agreed to hold the litigation in abeyance until FOP could examine these two productions in full.

The District subsequently produced responsive documents in electronic format[13] along with a revised *Vaughn* index. It then filed a motion for summary judgment or in the alternative a motion to dismiss FOP's suit as moot. The District preliminarily argued that FOP's "overbroad" request had never triggered an obligation on the District's part to search for or produce documents, because FOP had neither "reasonably described" the records sought nor provided necessary clarifying information as requested by the District. The District then argued that it had nevertheless reasonably interpreted FOP's FOIA request and timely produced responsive documents. Alternatively, the District argued that the case should be

---

[13] MPD provided the documents to FOP on a combination of DVDs and CDs. It later provided this same production to FOP on a flash drive.

dismissed as moot because the District had produced "tens of thousands of pages of responsive documents"; because FOP could not "produce any credible evidence to demonstrate that there are any additional documents responsive to its request"; and because there were "no longer any 'live' issues . . . to decide."

FOP opposed the District's motion to dismiss, arguing that its FOIA request reasonably described the records sought, as evidenced by the District's efforts to produce some responsive documents; that the District's search and resulting production were not reasonable because the District had arbitrarily limited its search to the email accounts of eight individuals selected by Ms. Cenatus; and that the case was not moot. FOP also cross-moved for summary judgment, arguing that the District had failed to timely comply with FOP's FOIA request, failed to demonstrate that it had conducted a reasonable search, and failed to justify in its *Vaughn* index all redactions or withholdings pursuant to the requirements of D.C. FOIA.

The Superior Court denied the District's motion to dismiss, concluding that the case was not moot, but it granted the District's motion for summary judgment. Taking up the District's argument that FOP had failed to reasonably describe the records sought, the court rejected the District's argument that such a failure

rendered FOP's request "void" and ruled instead that it tolled the District's obligations to produce documents under the deadlines imposed by D.C. FOIA. The trial court then determined that the District's search and production were reasonable in light of FOP's "overbroad and vague" request, coupled with FOP's failure to respond to a request for clarification. Lastly, the court ruled that MPD's revised *Vaughn* index was sufficiently detailed to justify withholding documents. But, noting certain discrepancies between the index and the documents actually produced, the court also ordered FOP to provide the District with a "full list of documents not listed in the [i]ndex" so that the District could produce a revised index that accurately reflected the redactions in the produced documents. Concluding that FOP had not "substantially prevailed" in the litigation, the court denied FOP's request for attorney's fees.

The Superior Court subsequently denied FOP's motion for reconsideration. This appeal followed.

## II.   The Adequacy of FOP's FOIA Request

The District argues that we need not review whether it complied with its disclosure obligations under D.C. FOIA because FOP's request "was so broadly

worded as to be void from the start." The District reasons that if "no FOIA request can be said to have been made in the first place," then any defects in its response cannot support a cause of action under D.C. FOIA. According to the District, summary judgment could have been granted on this ground alone. Reviewing this threshold question of law—in essence, a question of statutory interpretation—de novo,[14] we reject the District's argument that the wording of FOP's request rendered it void, and we uphold the trial court's decision to review the District's FOIA compliance.

The District's novel argument cannot be reconciled with the language or animating spirit of D.C. FOIA. D.C. FOIA is a sunshine law that codifies, as "[t]he public policy of the District," the entitlement of "all persons . . . to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees." D.C. Code § 2-531 (2015 Supp.). A core provision is D.C. Code § 2-532 (c), which requires a "public body, upon request reasonably describing any public record,"[15] to timely produce

---

[14] *District of Columbia v. Place*, 892 A.2d 1108, 1110-11 (D.C. 2006).

[15] D.C. FOIA borrows the definition of "public record" from the D.C. Administrative Procedure Act. D.C. Code § 2-539 (2006 Repl.) (incorporating D.C. Code § 2-502 (18) (2006 Repl.) ("all . . . documentary materials . . . retained by a public body.")). "Public body" is not defined by D.C. FOIA, but the D.C.

(continued…)

those documents in its possession or to provide a legitimate reason for nonproduction. The District urges this court to interpret this statutory provision as imposing a predicate "specificity" requirement that gives individual FOIA officers the authority to ignore FOIA requests that, in their view, fail to "reasonably describe[]" records. But neither D.C. Code § 2-532 (c) nor any other provision of D.C. FOIA states that a requester's failure to reasonably describe records to a FOIA officer's satisfaction will render the request void. Particularly in light of the statutory directive that the provisions of D.C. FOIA be "construed with the view toward expansion of public access," D.C. Code § 2-531, we could treat that silence as definitive and reject the District's argument. But even were we to discern ambiguity in the statute and interpret it with the other tools we have at hand, we would reach the same conclusion.

The District acknowledges that the "reasonably describ[es]" language from D.C. Code § 2-532 (c) was modeled on amendments to the federal FOIA. *See* Committee on the Judiciary and Criminal Law, D.C. Council, Report on Bill No. 1-119 at 7 (Sept. 1, 1976). The federal statute originally obligated federal agencies

---

(continued…)
APA defines it as "the Mayor, an agency, or the Council of the District of Columbia." D.C. Code § 2-502 (18A) (2006 Repl.).

to respond to requests for "identifiable records." But a concern arose that agencies were withholding documents from the public by narrowly construing this phrase—that they were denying individuals' requests even when they knew "all along precisely what records were being requested." S. Rep. No. 93-854, at 162 (1974); *see also Truitt v. Dep't of State*, 897 F.2d 540, 544-45 (D.C. Cir. 1990). Thus, in 1974, Congress revised the statute to make clear that, to trigger an agency's federal FOIA obligations, a requester need only "reasonably describe[]" the records sought. *See* S. Rep. No. 93-854, at 161-62 (1974); *see also* 5 U.S.C. § 552 (a)(3)(A) (2012); *Truitt*, 897 F.2d at 544-45. The amendment was meant to "make[] explicit the liberal standard for identification," not to limit disclosure of public records. S. Rep. No. 93-854, at 162 (1974) ("[T]he identification standard . . . should not be used to obstruct public access to agency records.").

The District Council passed local FOIA legislation two years later, in 1976. In its report on the bill, the Committee on the Judiciary and Criminal Law specifically noted Congress's concern that, under the earlier version of the federal FOIA, federal agencies had "used the lack of identification as a general excuse for withholding records." Report on Bill No. 1-119, at 7. Accordingly, the Committee explained that its draft legislation adopted the federal "reasonably describ[e]" language to clarify "the nature of a sufficient request" under D.C. FOIA. *Id.* And

in its section-by-section analysis of the bill, the Committee stated that a "request would be sufficient if it contained the general subject matter involved and reference to the official or to an office within an agency which was either the source or office responsible for keeping the record." *Id*. at 12.

The implementing regulations of D.C. FOIA, in turn, impose no greater burden on requesters than to "reasonably describe the desired record(s)." 1 DCMR § 402.4.[16]  Far from giving an individual FOIA officer the authority to deem a FOIA request void when the officer is unsure what the requester wants or where it might be found, the regulations impose an affirmative obligation on the FOIA officer to engage with the requester and seek out the information needed to fulfill the request:  "Where the information supplied by the requester is not sufficient to permit the identification and location of the record by the agency without an unreasonable amount of effort, the requester shall be contacted and asked to supplement the request with the necessary information."  1 DCMR § 402.5. Indeed, the regulations explicitly require that "[e]very reasonable effort . . . be

---

[16]    Requesters are invited, "[w]here possible," to provide "specific information regarding names, places, events, subjects, dates, files, titles, file designation, or other identifying information."  1 DCMR § 402.4.

made by the agency to assist in the identification and location of requested records." *Id*.

Moreover, when a District entity subject to FOIA has difficulty understanding a request, the regulations provide that such difficulty operates as a tolling mechanism. Pursuant to 1 DCMR § 405.6, which falls under a section of the regulations addressing "Time Limitations," the clock for production does not start until the request is received "in compliance with [D.C. FOIA and its regulations]." 1 DCMR § 405.6. More particularly, if a FOIA officer, "pursuant to § 402.5, [has] contact[ed] the requester for additional information, then the request is deemed received when the Freedom of Information Officer receives the additional information." *Id*.

In this case, there was no reason to toll the District's obligation to respond to FOP's request, much less reason to deem that request void. As we read FOP's request, it reasonably described what FOP sought. FOP requested MPD emails from a discrete time period (November 1, 2006 to September 24, 2010) that were sent to or by particular individuals (Eric Holder and Mark Tuohey), or that were about a particular entity (the Washington D.C. Police Foundation). We fail to see why MPD or OCTO struggled to discern what was meant by this request, but to the

extent they did, D.C. FOIA regulations obligated the agencies to ask for clarifying information (as MPD and OCTO both did[17]). At most, any lingering confusion about what to look for or where to find it is properly considered only in determining whether the District's search was reasonable. *See infra* Part III.

But the crux of the District's argument on appeal is not that FOP's request was void due to a lack of clarity. Rather, the District argues that FOP's FOIA request was void because the effort required to respond—including the necessary search and review process—imposed too great a burden on the District.[18] To make this argument, the District looks to federal cases postdating the passage of D.C.

---

[17] Clearly, MPD and OCTO did not consider FOP's request void. To the contrary, Ms. Cenatus acknowledged receipt, gave FOP's request an official number, indicated that she would process the request, and then subsequently represented that, "hav[ing] processed" FOP's FOIA request, she was producing 1,400 pages of responsive documents to FOP. For its part, OCTO eventually gave MPD 16,703 pages of documents in response to FOP's request, which MPD then turned over to FOP.

[18] The District objects to what it understands as a request that it search all email accounts belonging to District employees—apparently 39,000 accounts total. But as the District is surely aware, one cannot direct a FOIA request to the entire District government. Rather, a requester seeking documents pursuant to D.C. Code § 2-532 (c) must target a particular "public body," i.e., a specific agency, the Mayor's Office, or the Council. See *supra* note 15; 1 DCMR § 402.1 ("A request for a record of an agency . . . shall be directed to the particular agency."). Thus, FOP's FOIA request can only be read as asking for a search—either by MPD or OCTO—of MPD email accounts. (FOP never indicated that it believed OCTO as OCTO possessed any responsive documents.)

FOIA that have interpreted the corresponding "reasonably describe[]" language in the federal FOIA so as to relieve federal agencies of their obligation to respond to requests for voluminous records.[19]  *See, e.g.*, *Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Commerce* (*AFGE*), 907 F.2d 203, 209 (D.C. Cir. 1990) ("[N]either request 'reasonably describes' a class of documents subject to disclosure . . . .  An agency need not honor a request that requires an unreasonably burdensome search.").

This later judicial construction of the "reasonably describes" language in the federal FOIA statute is no more than "instructive authority with respect to our own Act."  *Doe v. District of Columbia Metro. Police Dep't*, 948 A.2d 1210, 1220 (D.C. 2008) (quoting *Wash. Post. Co. v. Minority Bus. Opportunity Comm'n*, 560 A.2d 517, 521 n.5 (D.C. 1989)); *see also Fraternal Order of Police, Metro. Police*

---

[19]  The District also cites to *Irons v. Schuyler*, 465 F.2d 608 (D.C. Cir. 1972), but as *Irons* predated the 1974 amendments to the federal FOIA, it could not have interpreted the amended statute.  To be sure, the Judiciary Committee Report discussing the proposed amendments contains a citation to *Irons*, but this citation simply supports the Committee's recommendation that a request "reasonably describe[]" the records sought.  *See* S. Rep. No. 93-854, at 162 (1974); *see also Truitt*, 897 F.2d at 545 & n.34.

*Dep't Labor Comm. v. District of Columbia* (*FOP Lanier*[20]), 52 A.3d 822, 829 n.14 (D.C. 2012) (acknowledging that "when a local law is borrowed from a federal statute, it is presumed that [the preexisting] judicial construction of the federal statute is borrowed as well," but explaining that this presumption does not apply to judicial constructions that postdate the passage of corresponding local laws).  Unlike the federal courts interpreting the federal FOIA, we cannot discern a basis to read into the "reasonably describing" language of D.C. Code § 2-532 (c) the authority to treat as void requests that the District asserts are overly burdensome.[21]

To begin with, we understand the plain language of our statute—"reasonably describing any public record"—to specify the quantum and quality of the information that must be provided by *the requester*.  This language modifies the

---

[20] Due to the number of published cases addressing distinct FOIA disputes between FOP and the District, we incorporate the subject matter of the request in our short-form citation to avoid confusion.

[21] Even federal courts that acknowledge this void-for-volume interpretation of the federal FOIA require an agency to justify its disregard of a FOIA request with "a detailed explanation by the agency regarding the time and expense of a proposed search [so that a court might] assess its reasonableness." *Shapiro v. CIA*, No. 14-CV-19, 2016 WL 1069646, at *5 (D.D.C. March 17, 2016) (quoting *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008)).  As discussed below, see *infra* Part III.A, neither MPD nor OCTO submitted such an explanation to the trial court. Thus, even were we to adopt this interpretation of D.C. FOIA, the District's argument would fail.

"request," not the effort that must be expended or the volume of production that must be made by the agency. This is not to say that the burden of fulfilling a request is of no concern under D.C. FOIA. When a FOIA request requires gathering and examining "a voluminous amount of separate and distinct records," D.C. Code § 2-532 (d)(1) affords the District additional time to produce responsive documents. See *supra* note 2.[22] The burden of fulfilling a request may also be considered by the trial court in evaluating the reasonableness of the District's efforts to search for and produce documents responsive to a request. D.C. FOIA provides these safety valves; but there is nothing in the statute that allows a prospective determination of undue burden to void a FOIA request.

The legislative history of D.C. Code § 2-532 (d) further supports our conclusion that D.C. FOIA does not permit a determination that certain FOIA requests are "void for volume." This history reflects the D.C. Council's intent to put a stop to "open ended" extensions for processing requests. Thus, after imposing an initial fifteen-day response time, the Council chose to "more strictly limit[] further delay to 10 days and only upon specified unusual circumstances such as with a request for voluminous separate records or records which exist in

---

[22] The District never invoked this provision when responding to FOP's request. See *supra* note 5.

other agencies or in which other agencies have an interest."[23]  *See* Report on Bill No. 1-119, at 6.  In light of the Council's aim to strictly limit extensions of time, even to accommodate production of voluminous documents, we are hard pressed to see how a different provision of D.C. FOIA, which in our view addresses the specificity of the request, "voids" *ab initio* a request that, in the agency's judgment, imposes too great a burden on the agency.[24]

---

[23]  In this respect, the District's statute diverges from the federal FOIA.  It establishes a much less flexible timetable for production of documents both overall and specifically with respect to voluminous documents.

The federal FOIA does not set deadlines for the actual production of documents; instead it sets deadlines for the agency to determine whether it will comply with the request, 5 U.S.C. § 552 (a)(6)(A)(i), and requires only the "prompt[]" production of documents, 5 U.S.C. § 552 (a)(3)(A).  The federal FOIA is also much more generous in giving agencies extra time to evaluate requests that appear to call for particularly voluminous productions:  while ordinarily an agency has twenty business days to determine whether it will comply with a request, 5 U.S.C. § 552 (a)(6)(A)(i), in "unusual circumstances" (including the possibility of an especially voluminous production, 5 U.S.C. § 552 (a)(6)(B)(iii)(II)) the agency can toll the deadline for this determination by notifying the requester of its need for additional time, 5 U.S.C. § 552 (a)(6)(B)(i).  And though the agency may not claim an extension of more than ten business days, *id.*, a court reviewing a claim of untimeliness may grant the agency additional time as needed so long as the agency can show it is exercising due diligence in the face of "exceptional circumstances." 5 U.S.C. § 552 (a)(6)(C)(i).

[24]  To the extent a ten-day extension is inadequate, that is an issue for the legislature, not this court, to resolve.  We note that the D.C. Attorney General has previously contacted the D.C. Council to ask it to "address [the burden-of-production problem] through legislation allowing agencies additional time to comply with FOIA requests," but to date the Council has not seen fit to amend D.C. FOIA in this manner.

In sum, we reject the District's argument that FOP could not challenge in court the adequacy of the District's search and production because FOP's FOIA request was "void for volume." Instead we conclude that FOP submitted a request that reasonably described the documents it sought, triggering MPD's and OCTO's obligations under D.C. FOIA to identify and produce responsive material. Thus we proceed to examine whether the District fulfilled its obligations under the statute.

## III. The Adequacy of the District's Search and Production

FOP argues that the Superior Court should not have granted the District summary judgment because the District's search for responsive documents, in only eight MPD email accounts, was inadequate,[25] and because the District's *Vaughn* index failed to adequately justify its withholdings and redactions.[26] Reviewing the

---

[25] FOP has not challenged the terms employed by the District in conducting its search.

[26] In its briefs to this court, FOP also sought to challenge the timing of the District's two productions. But at oral argument FOP conceded that, once a production has been made, the only issue for the courts is the adequacy of the production, and if the production is adequate, the timeliness of the production is moot, *see Fraternal Order of Police, Metro. Police Labor Comm. v. District of Columbia*, 113 A.3d 195, 199 (D.C. 2015) ("FOP's request for such a declaration [of untimeliness] is therefore moot once the trial court determines that the District has adequately and completely complied with the FOIA request."); *see also id.* at

(continued…)

trial court's ruling de novo, we conduct an independent review of the record and apply the same substantive standard used by the trial court. *Murphy v. Schwankhaus*, 924 A.2d 988, 991 (D.C. 2007). We conclude that the District failed to demonstrate that it was entitled to summary judgment, *Smith v. Swick & Shapiro, P.C.*, 75 A.3d 898, 901 (D.C. 2013) ("Summary judgment is appropriate only when there are no material facts in issue and when it is clear that the moving party is entitled to judgment as a matter of law."), and thus determine that remand is required.

### A. *The Adequacy of MPD's Search*

In assessing whether a District entity subject to FOIA has undertaken an adequate search to fulfill a FOIA request, courts look not to "the fruits of the search," but instead to the "appropriateness of the methods used to carry out the search."[27] *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir.

---

(continued…)
200 (explaining that adequate production of documents moots out litigation of timeliness but not of attorney's fees).

[27] In our analysis of this issue, we rely on federal case law as well as District precedent because this court has endorsed the test employed by federal courts for evaluating the adequacy of a search for documents responsive to a FOIA request. *See Doe*, 948 A.2d at 1220.

2003); *accord*, *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."). "An agency's search conducted in response to a FOIA request 'need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request.'" *Fraternal Order of Police, Metro. Police Labor Comm. v. District of Columbia* (*FOP Peaceoholics*), 79 A.3d 347, 360 (D.C. 2013) (quoting *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986)).

In FOIA cases, "[t]he burden is on the agency to demonstrate, not the requester to disprove, that the materials sought . . . have not been improperly withheld." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989) (quoting Committee Report explaining that "[p]lacing the burden of proof upon the agency puts the task of justifying the withholding on the only party able to explain it"). When the District seeks summary judgment, this burden aligns with the District's burden as the moving party to prove there is no genuine issue of fact regarding its fulfillment of its FOIA obligations. The District must establish "beyond material doubt" that it expended reasonable efforts "to uncover all relevant documents." *Nation Magazine, Washington Bureau v. U.S. Customs*

*Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Truitt*, 897 F.2d at 542). To carry that burden, the District "must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Id.* (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also FOP Peaceoholics*, 79 A.3d at 360 ("The burden is on the agency to establish 'through reasonably detailed affidavits that its search was reasonable.'" (quoting *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993))).

As this court has explained, it is not enough for an affidavit to merely state, in conclusory terms, that the locations searched were "most likely to contain the information which had been requested." *Doe*, 948 A.2d at 1220-21 (quoting *Oglesby*, 920 F.2d at 68). Instead, the affidavits submitted by the District in support of a motion for summary judgment "must demonstrate 'with reasonable detail[] that the search method . . . was reasonably calculated to uncover all relevant documents.'" *FOP Peaceoholics*, 79 A.3d at 360 (quoting *Doe*, 948 A.2d at 1221). More concretely, the District must adequately explain both how the search was conducted and why it was conducted in that manner; only then can the trial court assess the reasonableness of the District's efforts. *See Oglesby*, 920 F.2d at 68 (determining that an agency failed to justify limiting its search to a single record system where it was "not clear from [the agency's] affidavit that

[this] system [wa]s the *only* possible place that responsive records [we]re likely to be located").

In this case, the District limited its search to eight MPD email accounts. We agree with FOP that the District failed to explain, much less justify, this limitation. While the District did attach an affidavit from Ms. Cenatus, that affidavit insufficiently explains the restricted search that she performed. And the District submitted no comparable affidavit detailing OCTO's search. As a result, we know very little, and nothing, respectively, about the rationales for MPD's and OCTO's searches, and we are thus unable to say that they expended reasonable efforts.

Ms. Cenatus's job as the FOIA officer for MPD was to oversee the search for documents in MPD's possession that were responsive to FOP's request. Yet Ms. Cenatus's affidavit does not provide the number of email accounts employed by MPD or describe her capacity to search MPD email accounts.[28] On this record

---

[28] In its opposition to FOP's motion for summary judgment, the District asserted that its "ability to search for e-mails can reasonably be conducted one of two ways": "individual users can manually search their computers, or the District can conduct a larger-scale search through [OCTO]." This assertion is not supported by Ms. Cenatus's affidavit or by any other document in the record. In any event, it is far from clear what is meant by a "manual" or "larger-scale search through [OCTO]."

we have no idea why searching all of MPD's email accounts was infeasible, much less why it might have been reasonable for her to limit her search to the eight accounts selected. *See Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 151 (D.C. Cir. 1986) (an agency must "describe at least generally the structure of the agency's file system which makes further search difficult"). The District asserts in its brief that, because "it would have been unreasonable for Ms. Cenatus to initiate a search of every District employee's email account, or all of MPD for that matter," she "needed to winnow down the implicated accounts." It goes without saying that Ms. Cenatus as the FOIA officer for MPD is only responsible for reviewing MPD records. But as to those records created and stored in electronic form, we do not know and cannot simply assume, in this age of computerized connectivity, that it would be unreasonable for MPD's FOIA officer to search all of MPD's email accounts, regardless of how many accounts that might be.[29]

---

[29] Electronic records have been subject to D.C. FOIA since the Council extended the statute's coverage through the Freedom of Information Amendment Act of 2000, D.C. Law 13-283, 48 D.C. Reg. 1917 (2001). The Council stated that its intent, "in keeping with the general purpose of FOIA," was "to provide the public greater access to information, improve the effectiveness of the law, and encourage better government responsiveness to requests for public records." Committee on Government Operations, D.C. Council, Report on Bill No. 13-829 at 1 (2000). As amended, D.C. FOIA provides that "[i]n responding to a request for records pursuant to this section, a public body shall make reasonable efforts to search for the records in electronic form or format, except when the efforts would significantly interfere with the operation of the public body's automated information system." D.C. Code § 2-532 (a-2).

This deficit of information alone should have precluded a determination that MPD's search was reasonable. But Ms. Cenatus's affidavit also failed to explain why the eight email accounts she selected were "reasonably calculated to uncover all relevant documents." *See Weisberg*, 745 F.2d at 1485 (quoting *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983)). Much as she did in *FOP Peaceoholics*, Ms. Cenatus simply asserted that she had assembled what she considered to be a reasonable list of individuals likely to have contact with Mr. Holder and Mr. Tuohey. *See* 79 A.3d at 361 ("[Ms.] Cenatus said she had selected these particular custodians based on [her] determination that they were—by virtue of their positions, titles and responsibilities—the individuals within MPD most likely to possess electronic communications responsive to FOP's FOIA request."). But other than stating that she assumed "the circle where responsive emails would be circulated is likely fairly small," Ms. Cenatus did not explain why this circle should be limited to eight officials, or why these eight MPD officials in particular were chosen and others were excluded. Nor is it clear why emailed communication about the D.C. Police Foundation would be limited to high-ranking officials. Thus, as in *FOP Peaceoholics*, Ms. Cenatus's declaration does "not enable a judicial arbiter to evaluate whether the search was, in fact, reasonably comprehensive." 79 A.3d at 361.

Turning to OCTO, we know even less—nothing, actually—about its steps to fulfill FOP's FOIA request, and thus we cannot evaluate the reasonableness of its efforts in this case. The District never submitted an affidavit from OCTO detailing where or how it searched for responsive emails. Ms. Cenatus stated in her affidavit that she "submitted a search request to [OCTO]," but we do not know what OCTO did with that request. Assuming OCTO searched only the email accounts used by the eight officials that Ms. Cenatus identified, we have no idea why circumscribing its search in this manner was reasonable. OCTO is, after all, the arm of the District government that "develops, implements, and maintains the District's IT and telecommunications infrastructure,"[30] and it reportedly employs "cutting edge" systems.[31] Perhaps it is nonetheless unreasonable to ask OCTO to run searches of all MPD email accounts, but if that is the case, OCTO must explain why.

Given the paucity of information provided by the District about its searches, we conclude that the District has failed to carry its burden to win summary

---

[30] Office of the Chief Technology Officer, District Agency Support, http://octo.dc.gov/page/district-agency-support (last visited April 19, 2016); *see* D.C. Code § 1-1403 (2013 Repl.).

[31] *See* Executive Office of the Mayor, *Mayor Bowser Announces Open Data Initiative, Names New Chief Technology Officer*, MAYOR.DC.GOV (January 12, 2016), http://mayor.dc.gov/release/mayor-bowser-announces-open-data-initiative-names-new-chief-technology-officer.

judgment with respect to the adequacy of its search.[32] That said, we do not shut the door to a summary judgment ruling for the District in the future. If the parties are unable to settle this case, *but see infra* Part IV, and if the District renews its motion for summary judgment and provides the court with sufficient detail about its email systems, about the mechanisms available to search those systems, and about the individuals likely either to have had contact with Mr. Holder or Mr. Tuohey or to have worked on matters related to the Police Foundation, it may yet be able to establish that its previous searches were adequate. *See FOP Peaceoholics*, 79 A.3d at 362 (explaining that the District might yet be entitled to summary judgment if it presented additional proof showing its efforts to search for documents were

---

[32] The District suggests that it was entitled to summary judgment, notwithstanding its failure to demonstrate that it conducted a reasonable search, because FOP did not "come forward with evidence to show that other e-mail accounts would likely also contain responsive materials." To the extent the District relies on our statement in *FOP Peaceoholics* that once the District has failed to meet its burden, FOP "needs to show only that the District might have discovered a responsive document had the District conducted a reasonable search in order to defeat the District's motion for summary judgment," 79 A.3d at 362, the District mistakes the familiar summary judgment standard—that the nonmoving party need only identify a material issue of fact on the face of the existing record—for a novel burden-shifting requirement with no foundation in our precedent. As explained above, the District, as the moving party, bore the burden of proof. FOP thus had no obligation to "come forward with evidence," if the record developed by the District, viewed in the light most favorable to FOP, revealed that material issues of fact had yet to be resolved. The District's failure to explain why it searched only eight email accounts raises substantial questions about the reasonableness of its search and precludes an award of summary judgment to the District.

reasonable). Thus, for now, we remand for further litigation, as needed, regarding the adequacy of the District's search for documents responsive to FOP's FOIA request.

**B.** *The Adequacy of the District's* **Vaughn** *Index*

FOP also argues that the Superior Court should not have granted the District summary judgment because MPD's revised *Vaughn* index was inadequate. For the reasons set forth below, we decline to reach this issue.

In its order granting summary judgment to the District, the Superior Court acknowledged FOP's argument that the District's *Vaughn* index[33] was incomplete and appeared to determine that this argument might have merit. The court directed FOP to provide the District with "the full list of documents not listed in the Index to allow [the District] to provide [FOP] with a revised index which includes the documents not previously listed." And it ordered the District to "supply a revised

---

[33] The court referred to the *Vaughn* index, singular, but the District had produced two indices, one with its October 29, 2010, production and another with its February 11, 2011, production.

*Vaughn* index within thirty days of [FOP's] findings." Nonetheless the court granted the District summary judgment in full.

When FOP moved for reconsideration, it stated that, pursuant to the court's order, it "intend[ed] to provide a more comprehensive objection to the District's *Vaughn* Index." In addition, FOP argued, as it does on appeal, that the District's *Vaughn* index neither (1) corresponded intelligibly to the production that the District had made, nor (2) contained sufficient information to justify the District's invocation of the deliberative process privilege. FOP subsequently filed a praecipe in which it identified 398 documents that it asserted had been redacted but not listed on the District's *Vaughn* index.

In response, the District filed a praecipe in which it (1) explained that some of the documents identified by FOP had not been redacted but had been incompletely produced for other reasons;[34] (2) announced that it was reproducing a number of documents in unredacted form; and (3) disclosed that it had not been able to locate the unredacted copies of a certain number of documents and thus was

---

[34] According to the District, in some cases "digital images [had] failed to load when they were retrieved from [OCTO]" and others were missing information because of particular "settings on the individual District employee's mailbox."

"unable to address the reasons for their withholding on the revised *Vaughn* Index." The District subsequently filed a second praecipe attaching a superseding 76-page "final" *Vaughn* index of all the documents for which it was asserting some privilege. Months later, the Superior Court denied FOP's motion for reconsideration in a one-page order.

In light of this procedural history, the Superior Court's summary judgment ruling appears to have been premature: the court ruled on the adequacy of the District's *Vaughn* index even as it directed further litigation about the index's adequacy. Moreover, given the court's order to the parties to continue to litigate this issue after its summary judgment ruling, it is unclear whether the Superior Court took into account subsequent filings related to the District's *Vaughn* index when it ruled on FOP's motion for reconsideration (which itself was filed before the District filed its "final" *Vaughn* index).[35] In the absence of adequate assurance that the Superior Court examined the final *Vaughn* index in conjunction with the

---

[35] The awkwardness of the situation is highlighted by the briefing to this court, in which FOP challenges the Superior Court's summary judgment ruling by pointing to deficiencies in the *Vaughn* index accompanying the District's October 29, 2010, production, rather than in the District's "final" index.

District's total production (which is not part of the record on appeal[36]) we conclude that the best course of action is to vacate the court's summary judgment ruling on this issue. If continued litigation proves necessary, the parties may raise with the Superior Court whether the District has "satisf[ied] its burden to provide 'a sufficiently detailed description of what it is refusing to produce and why'" in its most current *Vaughn* index.[37] *FOP Peaceoholics*, 79 A.3d at 358 (quoting *Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1042 (9th Cir. 1999)).

---

[36] This is another impediment to appellate review: it precludes us from determining the force of FOP's argument that it cannot match the District's *Vaughn* index with its production because the production documents are neither Bates-stamped nor adequately identifiable by other means. It is surprising, however, that the District has not taken this simple step, particularly given the documents' electronic format. While Bates-stamping is not mandatory, an agency's production must be organized in a way that allows a requester to easily identify the redacted documents referenced in a *Vaughn* index. *See Vaughn*, 484 F.2d at 827-28.

[37] In light of our decision to reverse the Superior Court's summary judgment order and leave open certain issues for further litigation as needed, we vacate the trial court's determination that FOP was ineligible for attorney's fees. *See Featherson v. Educ. Diagnostic Inst., Inc.*, 933 A.2d 335, 339 n.4 (D.C. 2007) (vacating the trial court's denial of appellant's fee request because, given the reversal of the trial court's substantive ruling, "a ruling that appellant is not the prevailing party[,] and therefore[] is not entitled to attorney's fees, is premature"). If FOP renews its request for attorney's fees at the conclusion of this litigation, the trial court may then determine whether FOP is eligible for fees under the catalyst theory adopted in *Frankel v. District of Columbia Office for Planning & Econ. Dev.*, 110 A.3d 553 (D.C. 2015), and, if so, whether an award of fees is warranted under the four-part test adopted in *FOP Lanier*, 52 A.3d at 828-32.

## IV.    Conclusion

A FOIA requester and the District entity receiving a request are not—or should not be—in an inherently adversarial relationship.  Litigation is authorized as an enforcement mechanism, but it is not meant to be the inevitable path.  And yet FOP and the District appear to have tacitly chosen a course of pitched warfare in the courts.  As a result, over the last five years, this court has issued seven published opinions resolving FOIA disputes between FOP and the District.  This opinion raises that number to eight.  Each case has presented its own discrete issues, but the constant is an apparent inability or unwillingness by both parties to communicate effectively to achieve the objectives animating FOIA.  Both parties seem to have forgotten what FOIA is all about.

FOP's sole interest should be to obtain the documents it has requested.  And yet in this case it ignored preliminary correspondence from MPD inquiring about its request.  Then, six days after MPD produced responsive documents, FOP sued the District without acknowledging that this production had occurred.  Perhaps FOP had not received MPD's letter announcing the production—the record is unclear—but the salient point is that FOP apparently never contacted MPD's FOIA officer (hardly a stranger to FOP) to inquire about the status of its request.  Even

after FOP collected MPD's initial production, FOP did not review this production carefully and thus did not notice for over a year that the production described as 1,400 pages only amounted to several hundred. Actions like these cause us to question whether FOP was more interested in obtaining responsive documents, or in litigating about obtaining responsive documents.

The District fares no better under our scrutiny. Its interest should be in fulfilling, to the best of its ability, the open-government objectives of FOIA. And yet OCTO's and MPD's correspondence with FOP did not advance that purpose. OCTO, without basis, told FOP it would not process FOP's request. MPD, for its part, objected that FOP's request was vague when it was not and indicated that additional information was needed to process that request, even though MPD had already begun to do so. MPD then asserted that it was entitled to more time to process FOP's request under D.C. Code § 2-523 (d) because another agency, OCTO, had a "substantial interest in the determination of this request," when OCTO had no such interest.

And even though MPD ultimately produced two sets of responsive documents, it did so in a manner apparently designed to ensure defects in production. MPD claimed that its initial production comprised 1,400 pages of

documents, but it presented no records to substantiate this claim, even when FOP asserted that MPD had turned over only a few hundred pages. And MPD's second production inexplicably took paper form, even though all responsive documents were electronic and could have been produced in that form (as they ultimately were). MPD then divided these hard copies—some 16,000 pages of documents— into "25 to 35 envelopes," which it mailed to FOP without advance notice, tracking, delivery confirmation, or proof of mailing. Actions like these suggest that the District, like FOP, is more interested in gamesmanship than in FOIA compliance.

While the text of the D.C. FOIA statute does not require the District and frequent FOIA requesters like FOP to consult in good faith, the course of this litigation illustrates the imperative to do so. We cannot order FOP and the District to end their FOIA feuds, but we can require them to engage in mediation so that they might determine whether settlement is possible, or at least narrow the areas of dispute, before resuming litigation. *See* D.C. Code § 17-306 (2013 Repl.) (authorizing this court, in the disposition of an appeal, to "direct the entry of such

appropriate order, judgment, or decision, or require such further proceedings to be had, as is just in the circumstances").[38]

For the reasons set forth above, we reverse the order granting summary judgment to the District and remand this case to the Superior Court with the directive that it enter an order requiring the parties to engage in mediation before resuming litigation in this case.

*So ordered.*

---

[38] We also encourage FOP and the District to meet outside the context of litigation to discuss how the District's FOIA compliance can be improved. We understand that FOP, as an institutional litigant, provides some service to all potential FOIA requesters by suing the District to hold it to its obligations under the statute. But we also recognize that the District, while fulfilling its FOIA obligations, has a government to run. There are limits to the benefits of litigation, for both FOP and the District. We urge more communication and collaboration.