**Marc TRUITT, Appellant,**

v.

**DEPARTMENT OF STATE, et al., Appellees.**

**No. 88–5086.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 30, 1989.

Decided Feb. 27, 1990.

As Amended May 10, 1990.

Sonya D. Winner, with whom Michael S. Horne, Washington, D.C., was on the brief, for appellant.

John D. Bates, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and R. Craig Lawrence and A. Patricia Frohman, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before MIKVA, Circuit Judge, ROBINSON, Senior Circuit Judge, and HAROLD H. GREENE,* United States District Judge.

Opinion for the Court filed by Senior Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Senior Circuit Judge:

This appeal solicits rulings on a variety of issues arising under the Freedom of Information Act (FOIA),[1] but the record presently before us permits sound resolution of relatively few. Principally among the emerging questions appropriate for present consideration, however, is whether a federal executive department may refuse to search a file likely containing sought-after but undisclosed documents solely on a claim that FOIA's provision that requests for records "reasonably describe[ ] such records"[2] had not been complied with. We answer that question in the negative.

## I

Marc Truitt is an historian probing Anglo–American policies and activities toward Albania during World War II and thereafter. In the early 1980's, he invoked the

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

1. 5 U.S.C. § 552 (1988).

2. *Id.* § 552(a)(3), quoted more fully in relevant part in text *infra* at note 25.

Freedom of Information Act in efforts to obtain pertinent materials from eight federal agencies.[3] Numerous documents were located; many were released without expurgation, others were redacted before release, and still others were withheld in their entirety. Dissatisfied with the agencies' searches, their revelations and the tempo of administrative appeals, Truitt instituted this litigation in the District Court.[4]

Pursuant to the court's order,[5] the agencies completed their searches, filed and supplemented their *Vaughn* indices,[6] and released additional documents.[7] Ultimately, on cross-motions for summary judgment, the court, concluding that the searches were adequate and that the materials withheld were exempt from disclosure, granted summary judgment in favor of the agencies.[8] This appeal followed, and we now make such dispositions as the record enables.

**3.** Truitt's requests therefor were directed to the Departments of State, Defense and Justice, the Central Intelligence Agency, the Federal Bureau of Investigation, the Immigration and Naturalization Service, the General Services Administration, and the National Archives and Records Service. Amended Complaint, *Truitt v. Department of State,* Civ. No. 83–3592 (D.D.C.) (filed Dec. 20, 1983) (caption) [hereinafter Amended Complaint], Joint Appendix (J.App.) 15–16.

**4.** *Truitt v. Department of State,* Civ. No. 83–3592 (D.D.C.) (filed Dec. 1, 1983) (docket entry), J.App. 2.

**5.** *Truitt v. Department of State,* Civ. No. 83–3592 (D.D.C.) (order) (filed Mar. 7, 1984), J.App. 8.

**6.** See *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 346–347, 484 F.2d 820, 826–827 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

**7.** See *Truitt v. Department of State,* Civ. No. 83–3592 (D.D.C.1988) (memorandum and order) at 3, J.App. 10–14.

**8.** *Id.* at 3–5, J.App. 12–14.

**9.** *Weisberg v. U.S. Dep't of Justice,* 227 U.S.App. D.C. 253, 260, 705 F.2d 1344, 1351 (1983). Accord, *Hill v. U.S. Air Force,* 254 U.S.App.D.C. 171, 173, 795 F.2d 1067, 1069 (1986) (reasonable search is consistent with demands of FOIA); *Meeropol v. Meese,* 252 U.S.App.D.C. 381, 395,

## II

Truitt attacks the thoroughness of the file search made by the Department of State. It is elementary that an agency responding to a FOIA request must "conduct[ ] a search reasonably calculated to uncover all relevant documents,"[9] and, if challenged, must demonstrate "beyond material doubt" that the search was reasonable.[10] " 'The issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate.' The adequacy of an agency's search is measured by a 'standard of reasonableness,' and is 'dependent upon the circumstances of the case.' "[11] If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.[12]

Truitt's call upon the State Department originally was for information on Albania

790 F.2d 942, 956 (1986) ("a search need not be perfect, only adequate"); *Weisberg v. U.S. Dep't of Justice,* 240 U.S.App.D.C. 339, 348, 745 F.2d 1476, 1485 (1984) (search must uncover relevant documents); *McGehee v. CIA,* 225 U.S.App.D.C. 205, 211, 697 F.2d 1095, 1101, *vacated in part on other grounds,* 229 U.S.App.D.C. 148, 711 F.2d 1076 (1983) (agency must take reasonable steps "to ferret out requested documents").

**10.** *Weisberg v. U.S. Dep't of Justice, supra* note 9, 227 U.S.App.D.C. at 260, 705 F.2d at 1351. Accord, *McGehee v. CIA, supra* note 9, 225 U.S. App.D.C. at 211, 697 F.2d at 1101 ("agency should bear the responsibility of convincing the trier of fact that its less than comprehensive search is reasonable under the circumstances"); *Goland v. CIA,* 197 U.S.App.D.C. 25, 38, 607 F.2d 339, 352 (1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).

**11.** *Weisberg v. U.S. Dep't of Justice, supra* note 9, 227 U.S.App.D.C. at 260, 705 F.2d at 1351 (quoting, in turn, *Perry v. Block,* 221 U.S.App.D.C. 347, 354, 684 F.2d 121, 128 (1982); *McGehee v. CIA, supra* note 9, 225 U.S.App.D.C. at 206, 697 F.2d at 1100–1101; *Founding Church of Scientology v. NSA,* 197 U.S.App.D.C. 305, 315, 610 F.2d 824, 834) (1979)) (emphasis in original).

**12.** *Perry v. Block, supra* note 11, 221 U.S.App. D.C. at 353, 684 F.2d at 127. Accord, *McGehee v. CIA, supra* note 9, 225 U.S.App.D.C. at 211– 212, 697 F.2d at 1101–1102; *Weisberg v. United*

falling within several subject categories.[13] The Department conducted a search, but did not extend it to "File 767," in which materials on Albanian "internal, political and national affairs" were kept. Later, on a visit to the National Archives, Truitt found in that file[14] a large number of pertinent documents which had not been released to him.[15] Other records had been removed from the file, apparently because they remained classified, but markers placed in the file indicated the probability that they too were responsive to Truitt's request.[16] Truitt insisted upon an agency examination of the file's removed components, a release of those nonexempt, and inclusion in the Department's *Vaughn* index of those claimed to be exempt.[17]

■ The Department has not honored Truitt's demand. In defense, it says no more than that Truitt asked for searches of only two files, neither of which was File 767; that those two files were examined; and that there was nothing to suggest the importance of looking into any other file.[18] The record, however, challenges the Department's factual predicate. Truitt's initial FOIA request made clear that he wanted all records related to the topics he particularized; it made no mention of files in which they might be contained.[19] True it is that, in a follow-up letter, Truitt stated that he was "specifically seeking documents for the period 1950–54" in two files he identified,[20] but that did not suggest that he had lost interest in other files because, in the same letter, he also asked for documents in four categories without designating files.[21] Indeed, the Department, in response to a subsequent entreaty by Truitt for 1955–56 materials on topics identical to those enumerated in his original request, released to him records bearing marks denoting File 767 as the repository.[22] So, at the very least, there were genuine issues as to the import of Truitt's demand for information and the sufficiency of the Department's ensuing search; and that, standing alone, establishes the impropriety of summary judgment.[23]

■ This is but one obstacle to approval of the Department's stance in regard to File 767; there is another, even more formidable. Even if Truitt's first request did not summon a search of the file, his later request—for examination of the documents removed therefrom—was specific. Instead of observing that entreaty, the Department chose not only to shield the removed items from disclosure but also, by refusing to list them in its *Vaughn* index, to insulate them from any contest over nondisclosure. We perceive no basis upon which the Depart-

*States Dep't of Justice,* 200 U.S.App.D.C. 312, 317, 627 F.2d 365, 370 (1980).

**13.** Letter from Marc D. Truitt to Sharon B. Kotok, Information and Privacy Coordinator, Bureau of Administration, Department of State (Aug. 6, 1980) [hereinafter Truitt–Kotok Letter], J.App. 33.

**14.** The file was in the Department's possession when Truitt initiated his request, but subsequently was placed in the Archives for permanent storage. See Affidavit of Marc Truitt, *Truitt v. Department of State,* Civ. No. 83–3592 (D.D.C.) (filed Feb. 3, 1986) ¶ 6 [hereinafter Truitt Affidavit], J. App. 210.

**15.** Letter from Sonya D. Winner, Esquire, to Rebecca L. Ross, Assistant United States Attorney (Aug. 27, 1985) at 3 [hereinafter Winner–Ross Letter], J. App. 143; Truitt Affidavit, *supra* note 14, ¶ 6, J.App. 210; Plaintiff's Statement of Undisputed Material Facts, *Truitt v. Department of State,* Civ. No. 83–3592 (D.D.C.) (filed Jan. 8, 1986) ¶ 10, J.App. 130.

**16.** Winner–Ross Letter, *supra* note 15, at 3, J.App. 143; Truitt Affidavit, *supra* note 14, ¶ 6, J.App. 210.

**17.** Winner–Ross Letter, *supra* note 15, at 3, J.App. 143.

**18.** Letter from Frank M. Machak, Information and Privacy Coordinator, Department of State, to Sonya D. Winner, Esquire (Oct. 31, 1985) at 1, J.App. 152; Defendants' Statement of Material Facts as to Which There is no Genuine Issue, *Truitt v. Department of State,* Civ. No. 83–3592 (D.D.C.) (filed Feb. 18, 1986) ¶ 79, J.App. 178–179; Brief for Appellees at 6–8.

**19.** Truitt–Kotok Letter, *supra* note 13, J.App. 33.

**20.** Letter from Marc D. Truitt to Mary Spruell, Information and Privacy Staff, Bureau of Administration, Department of State (Sept. 10, 1980) at 1, J.App. 34.

**21.** *Id.*

**22.** See J.App. 193–195, 199.

**23.** See cases cited *supra* note 12.

ment could vindicate that action even if it were true that Truitt's earlier calls for information were too vague to implicate File 767. To be sure, a request which fails to "reasonably describe[ ]" the documents sought does not trigger a search of agency records.[24] When, however, an agency becomes reasonably clear as to the materials desired, FOIA's text and legislative history make plain the agency's obligation to bring them forth.

With exceptions inapposite here, Section 3(a)(3) of FOIA specifies that

> each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.[25]

The language "request for records which ... reasonably describes such records" was inserted in 1974[26] in replacement of the words "request for identifiable records," the terminology of Section 3 as originally enacted in 1967.[27] Although the committee reports in both houses of Congress had declared that a "request for identifiable records" involved no more than a reasonable description enabling agency personnel to locate the records sought,[28] and had warned that the 1967 statutory formulation was "not to be used as a method for withholding,"[29] the 1974 Senate Report[30] noted that "cases nonetheless have continued to arise where courts have felt called upon to chide the government for attempting to use the identification requirements as an excuse for withholding documents."[31] The Report cited as examples two decisions in this circuit,[32] and another in which "the

---

24. See 5 U.S.C. § 552(a)(3) (1988), quoted more fully in relevant part in text *infra* at note 25.

25. 5 U.S.C. § 552(a)(3) (1988).

26. Pub.L. No. 93–502, § 1(b)(1), 88 Stat. 1561 (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News 1798. See S.Conf.Rep. No. 1200, 93d Cong., 2d Sess. 8 (1974); H.R.Conf.Rep. No. 93–1380, 93d Cong., 2d Sess. 8 (1974), U.S.Code Cong. & Admin.News 1974, p. 6267.

27. Pub.L. No. 90–23, § 1, 81 Stat. 54, 55 (1967), which in turn had amended the public information section of the Administrative Procedure Act, Act of June 11, 1946, § 3, 60 Stat. 237, 238 (1946), a provision that was "full of loopholes which allow[ed] agencies to deny legitimate information to the public." S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965) [hereinafter 1965 Senate Report]; See H.R.Rep. No. 1497, 89th Cong., 2d Sess. 5 (1966), *reprinted in* [1966] U.S.Code Cong. & Admin.News 2418 [hereinafter 1966 House Report]. As we observed in *Bristol–Myers Co. v. FTC,* 138 U.S.App.D.C. 22, 25, 424 F.2d 935, 938, *cert. denied,* 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970), "[w]hen Congress acted to close those loopholes, it clearly intended to avoid creating new ones."

28. 1965 Senate Report, *supra* note 27, at 8 ("[t]he records must be identifiable by the person requesting them, i.e., a reasonable description enabling the Government employee to locate the requested records"); 1966 House Report, *supra* note 27, at 9 ("[t]he persons requesting records must provide a reasonable description enabling Government employees to locate the requested material").

29. 1965 Senate Report, *supra* note 27, at 8; 1966 House Report, *supra* note 27, at 9, U.S.Code Cong. & Admin.News 1966, p. 2426.

30. S.Rep. No. 93–854, 93d Cong., 2d Sess. 10 (1974) [hereinafter 1974 Senate Report]; see also H.R.Rep. No. 93–876, 93d Cong., 2d Sess. 2–4 (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News 6267 [hereinafter 1974 House Report].

31. 1974 Senate Report, *supra* note 30, at 10.

32. *Id.* The decisions were *Bristol–Myers Co. v. FTC, supra* note 27, and *National Cable Television Ass'n v. FCC,* 156 U.S.App.D.C. 91, 479 F.2d 183 (1973). In *Bristol–Myers,* the agency relied upon "extensive staff investigation, ... accumulated experience and available studies and reports" in promulgating a proposed rule, and referred to them in announcing the rulemaking proceeding. 138 U.S.App.D.C. at 25 n. 7, 424 F.2d at 938 n. 7. Bristol–Myers sought identification and disclosure of the phenomena referred to, which the agency refused to reveal. The District Court dismissed Bristol–Myers' complaint on the ground that the information requested did not constitute "identifiable records," but we reversed. We held that the agency could "hardly claim that it was unable to ascertain which documents were sought by Bristol–Myers," for "[t]hese materials are adequately identified in the request for disclosure of the items mentioned in the [agency's] Notice." *Id.* at 25, 424 F.2d at 938 (footnote omitted).

In *National Cable,* the agency issued a notice of rulemaking with a view to adoption of a new fee schedule. The association, desiring to file comments, asked for an opportunity to inspect several categories of documents it believed the

government had the temerity to argue that the request being resisted was not for 'identifiable' records, even though the court specifically found that the agency in question had known all along precisely what records were being requested." [33] The Report emphasized that "[w]hile the committee does not intend by this change to authorize broad categorical requests where it is impossible for the agency reasonably to determine what is sought,[34] ... it nonetheless believes that the identification standard in the FOIA should not be used to obstruct public access to agency records." [35] The 1974 substitution of language, the Report explained, "makes explicit the liberal standard for identification that Congress intended and that courts have adopted, and should thus create no new problems of interpretation." [36]

When the Department completed the file search occasioned by Truitt's request, it reported that all records pertinent thereto had been uncovered. We have no cause to doubt the Department's sincerity in that regard. But the fact of the matter was that the Department was mistaken, for there were responsive documents in File 767, and likely others equally responsive which then had been or later were taken out. In that situation, as hitherto we have announced, "what is expected of a law-abiding agency is that it admit and correct error when error is revealed." [37] Having learned of Truitt's interest in the documents removed from File 767, it could not justify its inertia simply on the claim that

---

agency had in its files. The agency balked, and the District Court concluded that the request was not for "identifiable documents." Again we reversed, observing that the association had identified the information desired in terms of the function it had served in the agency's development of the proposed fee schedule. We realized that "before the [agency] could comply with the request, it would have to identify the documents more specifically, as, for example, by name and file number," and that "[t]o do this the [agency] would have to retrace the steps taken in the development of the rulemaking notice." 156 U.S.App.D.C. at 98, 479 F.2d at 190. Notwithstanding, we concluded that *Bristol–Myers* was controlling; "[o]nce the request has been made as specific as the agency's public statements permit," we said, *"Bristol–Myers* teaches [that] [i]f the agency has previously identified a class or category of documents in the normal course of its affairs, it must produce them in response to a request phrased in terms of the class or category." *Id.* at 100, 479 F.2d at 192.

33. That case was *Legal Aid Soc'y v. Shultz,* 349 F.Supp. 771 (N.D.Cal.1972). There the request was for various records relating to the Treasury Department's enforcement of Executive Order 11246, as amended, 3 C.F.R. 169 (1974), requiring affirmative use of the Federal Government's economic power as a consumer to prevent racial discrimination in employment. The court rejected the Department's contention that the request did not solicit "identifiable records." Examining events forerunning the litigation, the court concluded that there was "no doubt that the Department, except when it is myopically searching through files to see as little as possible, can discover information based on [the requesters'] description." 349 F.Supp. at 778. Quoting *Wellford v. Hardin,* 315 F.Supp. 175, 177 (D.Md.1970), *aff'd,* 444 F.2d 21 (4th Cir.

1971), the court declared that " '[t]he fact that to find the material would be a difficult or time-consuming task is of no importance ...; an agency may make such charges for this work as permitted by the statute. To deny a citizen that access to agency records which Congress has specifically granted, because it would be difficult to find the records, would subvert Congressional intent to say the least.' " *Id.*

34. At this point, the report cited *Irons v. Schuyler,* 151 U.S.App.D.C. 23, 465 F.2d 608, *cert. denied,* 409 U.S. 1076, 93 S.Ct. 682, 34 L.Ed.2d 664 (1972), where we upheld the refusal of the Commissioner of Patents to produce " 'all unpublished manuscript decisions of the Patent Office, together with such indices as are available.' " *Id.* at 25, 465 F.2d at 610. It was uncontested that "[t]here are more than 3,500,000 files of patents, approximately 100,000 files of patent interferences (terminated or unterminated), approximately 180,000 pending patent applications, and well over a million of abandoned patent applications, any of which may contain one or more manuscript decisions." *Id.* at 26, 465 F.2d at 611.

35. 1974 Senate Report, *supra* note 30, at 10.

36. *Id.* The 1974 House Report, *supra* note 30, at 5–6, stated that the 1974 amendment was "designed to ensure that a requirement for a specific title or file number cannot be the only requirement of an agency for the identification of documents. A 'description' of a requested document would be sufficient if it enabled a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort."

37. *Meeropol v. Meese, supra* note 9, 252 U.S.App. D.C. at 392, 790 F.2d at 953.

Truitt had not manifested it earlier. Rather, the Department came under a duty to conduct a reasonable search for the removed items, and to either disclose them to Truitt if they were nonexempt[38] or, if deemed exempt, to treat them in its *Vaughn* index to afford Truitt an opportunity to contest the exemption claim, and to provide a reviewing court with an informed basis upon which to rule thereon. Here the Department did neither, and the District Court erred in upholding its action.

## III

Truitt asked the Central Intelligence Agency (CIA) to release records in the same topical categories listed in the request he submitted to the State Department.[39] One such topic was an alleged attempt by the United States and the United Kingdom to overthrow the Tirane Regime in Albania during the period 1949–54.[40] The CIA declined to acknowledge either the existence or the nonexistence of materials of that nature,[41] and in doing so it stood on firm ground. Confronted with a strikingly similar scenario in *Miller v. Casey*,[42] we held that the CIA could pursue that course whenever "an answer as to whether the files existed would be tanta-

mount to declaring whether the mission occurred,"[43] and revelation would threaten harm to the Nation's security or foreign relations.[44] That such harm would follow here is strongly indicated by undisputed CIA recitals documented in the record.[45]

Truitt does not, however, contest the CIA's posture in that regard. Bowing to the controlling effect of *Miller*, he contends that it does not sanction an agency refusal to confirm that all files likely containing responsive documents have been searched and that all nonexempt materials have been released.[46] *Miller*, he points out, involved a request for information on a single topic, any response to which would necessarily have admitted or denied that the CIA had a file thereon, and thus would have revealed whether a secret operation had occurred.[47] That danger is not present, Truitt urges, when, as here, the FOIA request extends to several topics, and no more than confirmation of adequate searching and appropriate disclosure is desired.[48]

We need not, however, pass on the soundness of Truitt's thesis. Contrary to Truitt's assertions, the CIA has declared that all repositories of documents he requested have been searched,[49] and that all

**38.** That was the course taken in prior cases in this circuit. *Id.* at 391–392, 790 F.2d at 952–953; *Ground Saucer Watch, Inc., v. CIA*, 224 U.S.App. D.C. 1, 3, 692 F.2d 770, 772 (1981); *Founding Church of Scientology v. NSA, supra* note 11, 197 U.S.App.D.C. at 316–317, 610 F.2d at 835–836; *Goland v. CIA, supra* note 10, 197 U.S.App.D.C. at 41, 607 F.2d at 355. See also *Military Audit Project v. Casey*, 211 U.S.App.D.C. 135, 164–165, 656 F.2d 724, 753–754 (1981).

**39.** Letter from Marc D. Truitt to Information Coordinator, Central Intelligence Agency (Aug. 22, 1980) [hereinafter Truitt–Information Coordinator Letter], J. App. 69.

**40.** See Amended Complaint, *supra* note 3, ¶ 44, J.App. 27; Truitt–Kotok Letter, *supra* note 13, J. App. 33; Truitt–Information Coordinator Letter, *supra* note 39, J. App. 69.

**41.** Letter from Harry E. Fitzwater, Chairman, Information Review Committee, Central Intelligence Agency, to Marc Truitt (undated) at 2, J. App. 81.

**42.** 235 U.S.App.D.C. 11, 730 F.2d 773 (1984).

**43.** *Id.* at 14, 730 F.2d at 776.

**44.** *Id.* at 15, 730 F.2d at 777.

**45.** Affidavit of Louis J. Dube, Information Review Officer, Directorate of Operations, Central Intelligence Agency (filed July 12, 1989) ¶¶ 39–44, 47–55 [hereinafter Dube Affidavit], J. App. 243–246, 249–257.

**46.** Brief for Appellant at 17–19; Reply Brief for Appellant at 4–5.

**47.** Brief for Appellant at 18; Reply Brief for Appellant at 4–5.

**48.** Brief for Appellant at 18; Reply Brief for Appellant at 4–5.

**49.** "In my judgment, based upon many years of working with FOIA requests, processing and determinations, the searches conducted by the CIA in response to Mr. Truitt's request were both exhaustive and complete." Dube Affidavit, *supra* note 45, ¶ 6, J. App. 221.

nonexempt materials have been disclosed.[50] That is substantially what Truitt has said he wanted, and all that he has sought in this court.[51]

## IV

■ As justification for numerous withholdings of requested information, the agencies invoked a total of five separate FOIA exemptions.[52] The many procedural and substantive controversies ensuing comprise the bulk of this appeal. In disposing of the exemption issues, however, the District Court limited its discussion to the following:

> [The court] finds ... that the exemptions claimed for the eight specific documents withheld in full by various [agencies][53] to have been appropriately invoked and justified by the detailed descriptions given of those documents. And it finds that the excised portions of those documents released in part to appear, from context, to have been the sort of information [the agencies] were properly entitled to delete.
>
> The Court has been given no reason, other than [Truitt's] suspicions based upon what he perceives as [the agencies'] grudging (and minimal) compliance with

FOIA, to doubt the veracity of [the agencies'] declarants.[54]

This treatment leaves us unable to engage in effective appellate review of this branch of the litigation.

In dealing with Truitt's claims that the agencies withheld nonexempt materials, the District Court was under FOIA's mandate to make its determinations de novo.[55] "The basic purpose of FOIA," the Supreme Court has proclaimed, "is to ensure an informed citizenry, vital to the functioning of a democratic society...."[56] Congress imposed the requirement of de novo judicial review "in order that the ultimate decision as to the propriety of the agency's action is made by the court and [to] prevent [the proceeding] from becoming meaningless judicial sanctioning of agency discretion."[57] And, to promote efficacious appellate oversight, we ourselves have admonished that "District Court decisions in FOIA cases must provide statements of law that are both accurate and sufficiently detailed to establish that the careful *de novo* review prescribed by Congress has in fact taken place."[58] This important appellate function is frustrated where, as here, the order under scrutiny merely declares in conclusory language that withholdings of FOIA-re-

**50.** See *id.* ¶¶ 12, 57, J.App. 225, 260–303.

**51.** In responding to the District Court's order directing compliance with *Vaughn v. Rosen,* see notes 5–7 *supra* and accompanying text, the Federal Bureau of Investigation (FBI) made use of a coded index which, Truitt charges, fell within the condemnation of *King v. United States Dep't of Justice,* 265 U.S.App.D.C. 62, 830 F.2d 210 (1987), and the FBI, with equal vigor, defends on the basis of *Keys v. United States Dep't of Justice,* 265 U.S.App.D.C. 189, 830 F.2d 337 (1987). The District Court did not specifically address this matter in its decision. Particularly since the case must be remanded for other reasons, we leave this issue for the District Court's consideration and resolution in the first instance. See *Hastings v. Judicial Conference of U.S.,* 264 U.S.App.D.C. 306, 322–323, 829 F.2d 91, 107–108 (1987), *cert. denied,* 485 U.S. 1014, 108 S.Ct. 1487, 99 L.Ed.2d 715 (1988); see also *Benard v. Gulf Oil Corp.,* 841 F.2d 547, 561 (5th Cir.1988); *Kontos v. Department of Labor,* 826 F.2d 573, 577 (7th Cir.1987); *Norman v. Housing Auth.,* 836 F.2d 1292, 1306 (11th Cir.1988).

**52.** These were Exemptions 1, 3, 6, 7(C), and 7(D), 5 U.S.C. § 552(b)(1), (3), (6), (7)(C), (7)(D) (1988).

**53.** This much of the court's statement is puzzling, for the record makes evident that in combination the agencies withheld many more than eight documents. Truitt suggests that the reference might be to eight sample documents, of which he had sought *in camera* review, which were withheld in full. Brief for Appellant at 12 n. 11.

**54.** *Truitt v. Department of State, supra* note 7, at 4, J. App. 13.

**55.** 5 U.S.C. § 552(a)(4)(B) (1982).

**56.** *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159, 178 (1978).

**57.** S.Rep. No. 813, 89th Cong., 1st Sess. 8 (1963).

**58.** *Founding Church of Scientology v. Bell,* 195 U.S.App.D.C. 363, 368, 603 F.2d 945, 950 (1979).

quested materials were proper, and does not elucidate why.[59]

The District Court's summary judgment, to the extent that it favors the Department of State, is reversed and in all other respects is vacated.[60] The case is remanded to that court for further proceedings consistent with this opinion.

*So ordered.*

---

**59.** *ITT World Communications, Inc. v. FCC,* 226 U.S.App.D.C. 67, 82, 699 F.2d 1219, 1294 (1983), *rev'd on other grounds,* 466 U.S. 463, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984); *Schwartz v. IRS,* 167 U.S.App.D.C. 301, 302, 305, 511 F.2d 1303, 1304, 1307 (1975). See *Vaughn v. Rosen, supra* note 6, 157 U.S.App.D.C. at 345, 484 F.2d at 825; *Ackerly v. Ley,* 137 U.S.App.D.C. 133, 136, 139, 420 F.2d 1336, 1339, 1342 (1969); *Coastal States*

*Gas Corp. v. Department of Energy,* 644 F.2d 969, 981–982 (3d Cir.1981).

**60.** While we find no error respecting the matter discussed in Part III *supra,* the CIA could not properly be awarded summary judgment in advance of suitable disposition of the exemption issues, as to which the CIA is in some wise implicated.