NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

23-P-369                                          Appeals Court

   BRUCE FRIEDMAN  vs.  DIVISION OF ADMINISTRATIVE LAW APPEALS &
                          another.[1]


                          No. 23-P-369.

        Suffolk.     November 6, 2023. - March 15, 2024.

           Present:  Ditkoff, Englander, & Walsh, JJ.


Public Records.  Supervisor of Public Records.  Division of
     Administrative Law Appeals.  Practice, Civil, Motion to
     dismiss.



     Civil action commenced in the Superior Court Department on
September 8, 2022.

     A motion to dismiss was heard by Robert B. Gordon, J.


     Bruce Friedman, pro se.
     Christine Fimognari, Assistant Attorney General, for the
defendants.


     ENGLANDER, J.  The Massachusetts public records law, G. L.

c. 66, § 10, "give[s] the public broad access to governmental

───────────────────

     [1] Bureau of special education appeals.  Because the bureau
is a unit within the division of administrative law appeals, we
refer to the defendants collectively as the bureau throughout
this opinion.

records" (citation omitted).  Boston Globe Media Partners, LLC

v. Department of Criminal Justice Info. Servs., 484 Mass. 279,

281 (2020).  To effect this, the statute generally provides that

upon receipt of a request, a "records access officer" of a

public agency or municipality "shall" permit inspection of the

requested public records within ten business days, G. L. c. 66,

§ 10 (a), subject to various exemptions and privileges.  See

G. L. c. 4, § 7, Twenty-sixth.  Notwithstanding its breadth,

however, the public records law does not require public agencies

simply to provide the requested records no matter the burden

imposed, nor does it require public agencies to shunt aside

their principal public functions to do so.  Rather, a rule of

reason governs both the obligation of public agencies to respond

and to provide records, and also the conduct of requestors of

public documents.  See Globe Newspaper Co. v. Commissioner of

Educ., 439 Mass. 124, 129-130 (2003) (Globe Newspaper Co.).

This case requires us to consider the limits of what reasonably

may be asked of public agencies under the public records law.

The plaintiff in this case, Bruce Friedman, appeals from a

Superior Court judgment that dismissed his complaint for failure

to state a claim upon which relief could be granted.  See Mass.

R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).  Friedman's claims

involve five separate public records requests that he made of

the defendant, the bureau of special education appeals (bureau),

during 2021 and 2022.  Friedman claims that the bureau violated the public records law with respect to each of the requests, and that he is entitled to the records as well as other relief.

As described in more detail below, Friedman in fact served approximately thirteen public records requests on the bureau over a roughly eight-month period between October 2021 and May 2022.  Several of these requests were either extremely broad or unduly vague.  When the bureau responded to these requests, over a dozen of its responses were met with a petition by Friedman to the Commonwealth's supervisor of records (supervisor), arguing that the bureau's responses were inadequate or unlawful.  The ensuing hail of requests, responses, petitions, additional responses, and re-petitions extended the burden on the agency and created an adversarial setting.  This was unfortunate, as the framework of the statutory process is (and should be) that the government agency and the requestor will each act reasonably.

On this appeal, we address each of Friedman's five requests separately, asking whether Friedman's claim based upon that request was properly dismissed under rule 12 (b) (6).  As to three of the requests, we conclude that dismissal was proper because the requests failed to "reasonably describe[] the public record sought."  G. L. c. 66, § 10 (a) (i).  As to the remaining two requests, Friedman's claims were not subject to dismissal,

because, at least as pleaded in the complaint, those requests complied with the public records law and the bureau failed to provide records to which Friedman was entitled. Accordingly, we vacate so much of the judgment as dismissed the claims concerning those two requests and remand for further proceedings consistent with this opinion. We otherwise affirm.

Background.[2] 1. Public records requests. Friedman is the founder of and responsible for the operation of a community-based news outlet. The defendant bureau is an independent unit within the Division of Administrative Law Appeals, with a total staff of twenty persons. The bureau provides dispute resolution services and serves as the adjudicatory body "of disputes between and among parents, school districts, private schools, and other State agencies" concerning the rights of children with disabilities to receive appropriate public education. G. L. c. 71B, § 2A (a).

---

[2] Unless otherwise noted, the facts are drawn from Friedman's complaint and the exhibits attached thereto, which we take as true in evaluating the motion to dismiss. See Marsh v. Massachusetts Coastal R.R. LLC, 492 Mass. 641, 643 (2023). We also consider the bureau's letters dated May 6, June 9, and August 4, 5, and 10, 2022, that were sent to the supervisor and Friedman concerning the requests at issue. Although those particular letters were not attached to the complaint, Friedman relied on the alleged inadequacy of the bureau's responses in framing his complaint. See Ryan v. Mary Ann Morse Healthcare Corp., 483 Mass. 612, 614 n.5 (2019); Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004).

The facts as to the five requests at issue are set forth separately below, together with the relevant history of the bureau's response.

a. Request one (submitted October 6, 2021). In request one, Friedman sought the following:

> "Any and all electronic mail and/or text messages between the [bureau] (inclusive of all [bureau] employees, administration and contractors) and anyone at the @mhtl.com [e-mail] domain," for the period from January 1, 2019, through present.

Through request one, by referencing the e-mail domain @mhtl, Friedman sought all e-mail messages (and text messages) between bureau staff and employees of the law firm Murphy, Hesse, Toomey & Lehane, LLP (Murphy, Hesse), for a period of over two and one-half years. As Friedman explained at argument, Murphy, Hesse often represents school districts in adjudicatory proceedings before the bureau, so this request encompassed all communications between the bureau and persons at a law firm that frequently appeared before it.[3] Because records responsive to request one might include personally identifiable information concerning students or parents, bureau staff were statutorily obligated to review the records and make appropriate redactions

---

[3] Because Murphy, Hesse does not represent the bureau but rather appears before it, the attorney-client privilege is not implicated by the request.

of such information before providing it to Friedman.  See G. L. c. 71B, § 2A (b).

In response to this request, the bureau located 11,000 potentially responsive e-mail messages (including duplicates), and divided those records into fifteen batches.[4]  The bureau produced the first batch in December 2021.  According to the bureau's response, it took bureau staff twenty-one hours to redact this first batch.

As to the remaining fourteen batches, in a response dated March 4, 2022, the bureau agreed to produce them without charge on a rolling basis.[5]  Thereafter, after extending the timeline for further production several times, the bureau explained in a filing with the public records supervisor that Friedman's

---

[4] The record does not reveal how the bureau identified these records.  It does not appear that the bureau produced text messages in response to request one (but see request two), and we note that the request for "text messages" with "anyone at the @mhtl.com domain" would seem particularly ambiguous, and difficult (if not impossible) to respond to.

[5] The bureau did not respond to request one within ten business days as prescribed by G. L. c. 66, § 10 (b), because the request apparently was delivered to a "spam" folder in the bureau's e-mail.  Friedman filed one petition with the supervisor when no initial response was received and two petitions thereafter arguing that the failure to timely respond precluded the bureau from charging a fee for production.  See G. L. c. 66, § 10 (e).  In response to those petitions, the bureau agreed to produce the remaining batches at no cost.  Thereafter, Friedman filed three more petitions with the supervisor challenging the adequacy of the first batch of records provided, as well as the bureau's failure to produce the remaining batches.

subsequent conduct had made it impossible to meet the bureau's public records law obligations, because Friedman "refuses to give the [bureau] a chance to respond to one onerous request before [he] files another." The bureau then detailed the additional administrative burden its staff of twenty faced in responding to Friedman's other public records requests and administrative appeals, including those appeals related to the adequacy of the first batch of records produced in response to request one. Ultimately, the bureau never produced the remaining fourteen batches of responsive records.

b. Request two (submitted May 4, 2022). Request two sought the following:

> "Any and all text messages between the [bureau] (inclusive of all [bureau] employees, administration and contractors) and anyone who currently works or has worked at the law firm [Murphy, Hesse]," for the period from January 1, 2017, through present.

Through request two, Friedman sought all text messages between bureau staff and anyone who currently or ever had worked at Murphy, Hesse for a period of over five years. This request encompassed messages on both personal and State-issued cell phones used by bureau staff; however, the request did not provide names (or telephone numbers) of past and present Murphy, Hesse employees to help facilitate the search. Because the text messages could contain personally identifying information of

students and parents, responsive records needed to be reviewed and, if necessary, redacted before production.

The bureau conducted searches of its staff members' cell phones and produced responsive records on three occasions.[6]  The bureau then took the position that its production was complete, but invited Friedman to provide additional information if he was aware of missing records that were not produced.

c.  Request three (submitted April 26, 2022).[7]  Request three sought the following:

> "Any and all data contained in the case management system used by the [bureau] for administration of [h]earing [r]equests," for the period from January 1, 2008, through present.

Through request three, the plaintiff sought all "data" in the system used by the bureau to administer hearing requests, stretching back over fourteen years.  Friedman later explained that he sought the "entire SQL Server dataset" in the "Time Matters management software" used by the bureau.

---

[6] Friedman filed three petitions with the supervisor in connection with this request.  In the first, Friedman successfully argued that text messages sent or received by bureau employees, including on their personal cell phones, that pertain to official business are public records.  On the remaining two petitions, he challenged the sufficiency of the production of responsive records.

[7] We list the public records requests at issue in the order they are described in the complaint, rather than chronologically.

The bureau initially stated that it was "impossible" to respond to the request as written. The bureau, however, did produce some responsive records -- the hearing request logs for the years that they were available. The bureau also conducted searches of its "Time Matters" program, and provided Friedman with screenshots of the searches so he "would know how the search to obtain the data was phrased." Those searches yielded spreadsheets that the bureau maintained "contain[ed] all the data the [bureau] uses to administer hearing requests," and apparently included information on hearings held before the bureau, as well as whether the hearing was initiated by a parent, school district, etc. The spreadsheets were also provided to Friedman.[8]

d. Request four (submitted April 26, 2022). Request four sought the following:

> "Any and all calendaring documents including electronic calendars of the [bureau] director," for the period from January 1, 2008, through present.

Through request four, Friedman sought the bureau director's calendars for over fourteen years. The bureau responded that it had "data in [its] Exchange server pertaining to the director's schedule," but that it encountered technological issues when it

_____

[8] Friedman challenged the sufficiency of the bureau's responses to request three through two petitions filed with the supervisor.

attempted to isolate that data and make the appropriate

redactions.[9]  The bureau has not produced records responsive to

this request.

e.  Request five (submitted April 16, 2022).  In request

five, Friedman sought for the period from January 1, 2008,

through present, the following:

> "Any and all raw data in any format, including but not limited to, databases, spreadsheets, recordings, electronic mail systems, and or written documents, which support, detail, and or provide substantive data published in the attached 'published documents' for the following specific information . . . ."

Then followed a list of twelve categories of documents (a

through l), set forth in the margin, related to hearings before

the bureau for the fourteen-year period in question.[10]

---

[9] Friedman filed two petitions with the supervisor challenging the sufficiency of the bureau's response to request four.  In the supervisor's review, she concluded that the director's personal (as opposed to State-issued) calendar may be withheld under exemption (e) to the public records law.  See G. L. c. 4, § 7, Twenty-sixth (e).  The parties make no argument about that decision.

[10] The twelve categories include:

> "a.  All documents substantiating the number of hearing requests filed by parents.
> "b.  All documents substantiating the number of hearing requests filed by schools/districts.
> "c.  All entries/notices of appearance(s) filed by attorneys representing schools/districts.
> "d.  All entries/notices of appearance(s) filed by attorneys representing parents.

Although request five sought data that supported or detailed "data published in the attached 'published documents,'" the "published documents" purportedly attached to request five were not provided in the record on appeal. At argument, Friedman contended that those "attached 'published documents'" clarified the scope of the records sought. Friedman further explained that the purpose of his request was to locate data underlying certain statistics that were published on the bureau's website from 2013 to 2019. As written, however, request five is logically read to seek "all raw data in any format" supporting information in twelve broad categories over a fourteen-year period. Responsive records needed to be reviewed to make appropriate redactions of personally identifying information. Moreover, the bureau's response indicated that

---

"e. All documents substantiating settlement conference data, including case number, attorney appearances, and the designation of 'settled[.]'
"f. All documents substantiating any party refuses mediation.
"g. All documents substantiating any party refuses a settlement conference.
"h. All documents substantiating 'Agreement to Participate' by any party.
"i. All documents substantiating any 'Hearing Officer Endorsement[.]'
"j. All documents substantiating 'parents fully prevailed[.]'
"k. All documents substantiating 'school districts fully prevailed[.]'
"l. All documents substantiating 'mixed relief was granted'" (Emphases omitted).

some records were not maintained in electronic form and some were stored off site.  For example, to produce notices of appearance and records where a party declined mediation over the requisite period, the bureau estimated that staff would need to review over three million pages of documents stored in 1,279 boxes and then perform the necessary redactions.

Although the record before us is not entirely clear, it appears the bureau produced redacted spreadsheets in response to five of these categories, and produced at least some records in response to several others.  The bureau also provided cost estimates to produce records responsive to categories e and g.[11]

2.  <u>Superior Court proceedings</u>.  In September 2022, Friedman sued in the Superior Court under G. L. c. 66, § 10A (<u>c</u>), alleging that the bureau failed to adequately respond to the five records requests.  The bureau filed a motion to dismiss, and in February 2023, following a hearing, a judge allowed the motion.  In his decision, the judge concluded that Friedman had not provided "sufficiently particularized or even reasonably described identification of the records sought."  The judge directed to the parties to "start over," and dismissed the complaint without prejudice.  The judge further directed that

---

[11] Friedman filed three petitions with the supervisor in connection with request five, challenging the sufficiency of the bureau's response as well as the cost estimates.

before Friedman filed a new action, the parties were to confer and make a good faith effort to agree on definitions, search parameters, timeframes for production, rules for withholding documents, and a methodology for computing fees.  This appeal followed.

Discussion.  We review the allowance of a motion to dismiss de novo, see Lanier v. President & Fellows of Harvard College, 490 Mass. 37, 43 (2022), and may affirm the judge's ruling on any ground supported by the record.  See Marculetiu v. Safety Ins. Co., 98 Mass. App. Ct. 553, 562 (2020).

1.  Public records law.  "The public records law . . . governs the public's right to access records and information held by State governmental entities."  Boston Globe Media Partners, LLC, 484 Mass. at 281.  While "the dominant purpose of the . . . law is to afford the public broad access to governmental records," Globe Newspaper Co. v. Boston Retirement Bd., 388 Mass. 427, 436 (1983) (Boston Retirement Bd.), that general principle is "tempered by the standard of reasonableness."  Globe Newspaper Co., 439 Mass. at 129-130.  As examples, the public records law requires a State agency to make records available for inspection at "reasonable times," to provide access "without unreasonable delay," and to provide copies of the record on payment of a "reasonable fee."  G. L.

c. 66, § 10 (a), (a) (iii).  See Globe Newspaper Co., supra at

130.  As the Supreme Judicial Court explained,

> "[b]y incorporating the concept of reasonableness into the
> manner, means, and methods by which the general principle
> of broad access to public records is to be implemented, the
> statute implicitly recognizes that it may not always be
> convenient, practical, or appropriate for the custodian to
> put aside other equally important or more urgent public
> business in order to respond immediately to every request
> for the examination of public records."

Id.

The touchstone of reasonableness also extends to the

conduct of the records requestor.  An agency is required to

furnish a copy of a public record "provided that" three

requirements are met and that no exemptions apply.  G. L. c. 66,

§ 10 (a).[12]  See G. L. c. 4, § 7, Twenty-sixth.  The use of the

introductory phrase "provided that" makes clear that the listed

requirements are conditions necessary to trigger the agency's

---

[12] General Laws c. 66, § 10 (a), as amended, provides:

"A records access officer . . . shall at reasonable times
and without unreasonable delay permit inspection or furnish
a copy of any public record . . . , or any segregable
portion of a public record, not later than [ten] business
days following the receipt of the request, provided that:
    "(i) the request reasonably describes the public
    record sought;
    "(ii) the public record is within the possession,
    custody or control of the agency or municipality that
    the records access officer serves; and
    "(iii) the records access officer receives payment of
    a reasonable fee as set forth in [G. L. c. 66,
    § 10 (d)]."

obligation to produce.  G. L. c. 66, § 10 (a).  Relevant here is the first of those conditions, which requires that "the request reasonably describe[] the public record sought."  G. L. c. 66, § 10 (a) (i).  A reasonable description of the requested record is necessary "so that the records can be identified and located promptly."  950 Code Mass. Regs. § 32.06(1)(a) (2017).[13]

While no binding authority interprets the reasonable description requirement in our public records statute, the Federal Freedom of Information Act (FOIA) contains a similarly worded provision.  See 5 U.S.C. § 552(a)(3)(A) (upon request that "reasonably describes such records" agency must promptly make records available unless agency or record is otherwise exempt).  In light of the similarities between the Massachusetts and Federal statutes, Massachusetts courts have previously looked to the Federal law for guidance.  See Attorney General v. District Attorney for Plymouth Dist., 484 Mass. 260, 276 (2020). See generally Scaccia v. State Ethics Comm'n, 431 Mass. 351, 355 (2000).  Contrast Boston Retirement Bd., 388 Mass. at 432-433

---

[13] The reasonable description requirement was added to the statute by an amendment effective January 1, 2017.  See St. 2016, c. 121, § 10.  Prior to that time, the related regulations provided: "Any person seeking access to a public record or any portion thereof shall provide a reasonable description of the requested record to the custodian so that he or she can identify and locate it promptly."  950 Code Mass. Regs. § 32.05 (4) (2003).

(differences between FOIA and Massachusetts statute reflect Legislature's conscious decision to depart from FOIA).

Federal courts have explained that the reasonable description requirement of FOIA is met when the request "would be sufficient [to enable] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort" (citation omitted).  Truitt v. Department of State, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990). See American Ctr. for Law & Justice v. United States Dep't of Homeland Sec., 573 F. Supp. 3d 78, 81 (D.D.C. 2021). "Agencies must read FOIA requests as drafted, and '[b]road, sweeping requests lacking specificity are not sufficient'" (citations omitted).  Center for Immigration Studies v. United States Citizenship & Immigration Servs., 628 F. Supp. 3d 266, 270 (D.D.C. 2022).

The Federal case law holds that an agency is not obligated to search for and disclose records until it receives a proper FOIA request that, among other things, meets the threshold reasonable description requirement.  See Center for the Study of Servs. v. United States Dep't of Health & Human Servs., 874 F.3d 287, 288 (D.C. Cir. 2017); Landmark Legal Found. v. Department

of Labor, 278 F. Supp. 3d 420, 430-431 & 431 n.7 (D.D.C. 2017).[14] However, once "an agency becomes reasonably clear as to the materials desired," its obligation to produce the records is triggered. Truitt, 897 F.2d at 544. The question whether a records request meets the reasonable description requirement may, in some instances, be resolved on a motion to dismiss as a matter of law. See Yagman v. Pompeo, 868 F.3d 1075, 1082 (9th Cir. 2017) ("The requirement . . . that a person submitting a FOIA request 'reasonably describe' what she or he seeks is properly viewed as an ingredient of the claim for relief," that may be addressed through motion to dismiss [citation omitted]). See also Gun Owners of Am., Inc. v. Federal Bur. of Investigation, 594 F. Supp. 3d 37, 42 (D.D.C. 2022).

The reasonable description requirement is a necessary bulwark of the public records law, as the law "was not intended to reduce government agencies to full-time investigators on behalf of [requestors]." Assassination Archives & Research Ctr., Inc. v. Central Intelligence Agency, 720 F. Supp. 217, 219 (D.D.C. 1989). The Federal cases described above, which interpret the requirement, are persuasive and we apply them

_____

[14] The bureau does not argue that it is free simply to ignore a request that does not meet the reasonable description requirement, see G. L. c. 66, § 10 (b). As detailed above, the bureau provided the requestor with responses explaining its position on each of the five requests at issue in this case.

here.  With those principles in mind, we consider the legal sufficiency of the records requests at issue, and the bureau's responses.  As provided in the statute, we review "the propriety of any agency or municipal action de novo," without deference to the supervisor's orders in the related administrative appeals.[15]  G. L. c. 66, § 10A (d) (1) (ii).

　　2.  Analysis.  a.  Request one.  Friedman's request for all e-mail messages between bureau staff and a specified e-mail domain (Murphy, Hesse's) for a three-year period provides a useful backdrop for discussing the reasonableness requirements of the law.  The request itself is extensive and extremely burdensome, encompassing 11,000 documents, each of which must be separately reviewed for whether they contain protected information.

　　The request likely is not "unreasonable" as a matter of law, however, solely because responding to it is extremely burdensome.  Indeed, we do not understand the bureau to argue

_____

　　[15] The public records law provides a requestor with two avenues for judicial review.  Friedman initiated a civil action in the Superior Court "to enforce the requirements of [G. L. c. 66]."  See G. L. c. 66, § 10A (c).  Friedman did not invoke the procedure under G. L. c. 66, § 10A (a), that permits a requestor to seek relief from any of the supervisor's orders through the filing of an action in the nature of certiorari under G. L. c. 249, § 4.  In any event, the statute provides that judicial review under § 10A is de novo.  G. L. c. 66, § 10A (d) (1) (ii).

that the request fails based upon burden alone.[16]  The documents responsive to request one can be <u>identified</u> with reasonable effort -- it is the production that is extremely time intensive. Arguably, then, the request "reasonably describes the public record[s] sought."  G. L. c. 66, § 10 (<u>a</u>) (i).  And the statute includes a mechanism for addressing large or difficult requests. In particular, the statute permits a records access officer to petition the supervisor for an extension of time to furnish the records "[i]f the magnitude or difficulty of a request, or the receipt of multiple requests from the same requestor, unduly burdens the other responsibilities of the agency."[17]  G. L. c. 66, § 10 (<u>c</u>).  In addition, "[a] records access officer may

---

[16] We do not rule out, however, that a request could simply be too burdensome to meet the "reasonably describes" requirement.  Some Federal cases have so held.  See <u>American Fed'n of Gov't Employees, Local 2782</u> v. <u>United States Dep't of Commerce</u>, 907 F.2d 203, 209 (D.C. Cir. 1990) ("An agency need not honor a request that requires 'an unreasonably burdensome search'" [citation omitted]).  See also <u>Center for Immigration Studies</u>, 628 F. Supp. 3d at 271-272.  It is possible that at a later stage in this litigation, the bureau might be able to show that the request, either by itself or in conjunction with Friedman's other communications, is unreasonably burdensome as a matter of fact.

[17] The supervisor may grant an agency an extension of twenty business days on a showing of good cause, and for a longer period if the supervisor "determines that the request is part of a series of contemporaneous requests that are frivolous or designed to intimidate or harass, and the requests are not intended for the broad dissemination of information to the public about actual or alleged government activity."  G. L. c. 66, § 10 (<u>c</u>).

assess a reasonable fee for the production of a public record,"
not to exceed the actual cost of reproducing the record, which
fee must be paid in advance.[18]  G. L. c. 66, § 10 (a)(iii), (d).

Thus, if a request is unduly large the statute provides for
extensions of time, and for the assessment of a reasonable fee.
Each of these mechanisms undoubtedly was available to the bureau
in responding to request one; the problem is that the bureau
appeared not to make its initial response within the ten
business days mandated by the statute, see G. L. c. 66,
§ 10 (b), which led Friedman to petition the supervisor of
public records and also led, eventually, to the bureau agreeing
to waive any fees for responding to the request.

Under the circumstances, Friedman has stated a valid claim
with respect to request one, which should not have been
dismissed.  The request adequately identified the records
sought, despite its absolute magnitude.  In the event that
Friedman ultimately proves his claim, questions as to how the
production should then proceed will be left in the first
instance to the sound discretion of the Superior Court judge.
We emphasize, once again, that the touchstone of compliance with
the statute is reasonableness.  Preferably the parties would

---

[18] The statute sets certain parameters for assessing the
fee, including that the agency may charge an hourly fee for
employee time after the first four hours.  See G. L. c. 66,
§ 10 (d) (ii).

work out, among themselves, reasonable timelines and a reasonable description of records sought.  Failing that, the judge may need to become involved.[19]

b.  Request two.  Unlike request one, which required the bureau to search through bureau staff's work e-mail accounts to identify messages to and from a specified e-mail domain, request two sought text messages exchanged between bureau staff (employees, administrators, and contractors) and "anyone who currently works or has worked" at the Murphy, Hesse law firm over a more than five-year period.  The request did not identify names of past and present employees of the law firm, nor did it identify cell phone numbers or any specific business that the text messages may concern.  To respond to the request, the

---

[19] On remand, the judge may consider whether, although the bureau previously agreed to waive fees as to request one, it is nevertheless appropriate for the bureau to charge a fee for further production activity as to that request.  The circumstances are unusual, and further development of the factual record is likely required in light of the statutory requirements for charging fees.  As it stands, the bureau claims that hundreds of person hours would be required to complete provision of the records.

We question the practicality of requiring an agency to provide "an itemized, good faith estimate" of fees for responding to a request such as request one within ten business days, where the agency ultimately determines that the request seeks 11,000 potentially responsive records, each of which must be separately reviewed for appropriate redactions.  G. L. c. 66, § 10 (b) (viii).  Given the statute's emphasis on reasonableness, there should be some opportunity to adjust the time requirements in responding to a request of this nature. Cf. G. L. c. 66, § 10 (c), last paragraph.

bureau would first have to determine, without aid from the request, each person who worked (or had worked) at the law firm, then somehow identify their personal cell phone numbers, and then conduct a search of each bureau staff member's personal (and, if applicable, work-issued) cell phone to determine whether they exchanged text messages.

Although the bureau made an effort to obtain and did voluntarily provide some responsive records, we conclude that its obligation to do so was not triggered by this request, because the request did not reasonably describe the records sought. The request did not include information sufficient to allow "a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort" (citation omitted). Truitt, 897 F.2d at 545 n.36. Cf. Landmark Legal Found. v. Department of Justice, 211 F. Supp. 3d 311, 318 (D.D.C. 2016) ("request for '[r]ecords evincing the use of' personal e-mail accounts, other electronic communication, and social media platforms to conduct government business" does not reasonably describe records sought).

Friedman asserts that the bureau's reasonable description argument must fail because the bureau did not assert the argument until its motion to dismiss in the Superior Court. We disagree. While as a practical matter it may be the better

course for an agency to state upfront that a request fails to meet the reasonable description requirement, the agency also may attempt to work with the requestor to determine whether the requestor can refine the request. That is what happened here. The bureau voluntarily produced some responsive records and also invited Friedman to provide information about additional text messages that he thought were missing in order to improve the search. Under the circumstances, the bureau did not also need to state in its prelitigation response that the original request violated the reasonable description requirement. The claims related to request two properly were dismissed.

c. Request three. Request three also fails to reasonably describe the records sought. The request seeks "[a]ny and all data contained in the case management system" used by the bureau for the administration of hearing requests, spanning a period of over fourteen years. The request as written literally seeks an entire database, and indeed, that is how Friedman describes it.[20] We agree with the bureau's initial position that it would not be possible to respond to this request, as the request does not

---

[20] Friedman explained in his administrative appeal that the bureau produced screenshots from a program called "Time Matters," which is a "[l]egal [p]ractice management tool . . . [that] uses a[n] SQL server [d]ata [b]ase as a [b]ack-[e]nd data store." In arguing that the bureau did not produce all responsive records, Friedman maintained that "[t]he entire SQL Server dataset is responsive to this request."

make a reasonable effort to define or limit what records it seeks. The request thus falls into the category of a "[b]road, sweeping request[] lacking specificity" (citation omitted), Center for Immigration Studies, 628 F. Supp. 3d at 270, -- which is unreasonable. While "segregation and extraction of the . . . requested information from the existing fields in [an agency's] databases is . . . the type of data recovery that is expected in a digital world under the public records law," that is not the nature of this request. Attorney General, 484 Mass. at 278. A request that in effect requires an agency to replicate all its data (and then apply appropriate redactions) is not a request that permits a bureau employee exerting a reasonable amount of effort to locate and produce the records. See Truitt, 897 F.2d at 545 n.36.

d. Request four. Request four is reasonably construed as seeking the director's calendars (electronic or otherwise). So construed, the request reasonably described the records sought. Through the parties' exchanges and the supervisor's orders, the bureau identified data in its "Exchange server" pertaining to the director's schedule that was responsive to request four. The bureau has not produced that data. Therefore, Friedman has sufficiently stated claims concerning request four.

e. Request five. Request five did not reasonably describe the records sought. The request sought "[a]ny and all raw data

in any format" concerning twelve separate categories of information over a fourteen-year period.  Friedman acknowledged at argument that this was his "most troublesome request"; however, he explained that the request was clarified by documents that he attached to the request, but that are not part of the record on appeal.  "We stress that it is an appellant's duty to produce an appendix containing all portions of the record relevant to the issues raised on appeal."  Lodigiani v. Paré, 103 Mass. App. Ct. 140, 141 n.3 (2023).

At argument, Friedman further explained that the purpose of his request was to locate data underlying certain statistics that were published on the bureau's website from 2013 to 2019, including those pertaining to the bureau's case load and the success rate of represented and unrepresented parties, as well as those statistics used in the bureau's annual reports. Friedman perhaps could have crafted a reasonable request that accomplished that end; the request as written did not.  See Gun Owners of Am., Inc., 594 F. Supp. 3d at 45 (FOIA requestor must submit new request to limit scope of previous request; request cannot be amended through brief filed in court).

The bureau responded by voluntarily producing documents and providing explanations concerning each category of document sought.  Despite the supervisor's suggestion that Friedman narrow the parameters of his request, the parties apparently

were unable to reach an agreement, and the bureau was not obligated to produce records in response to the request as written because it was not sufficiently specific.[21]

Conclusion. We vacate so much of the judgment as dismissed the claims concerning public records requests one and four, and remand for further proceedings consistent with this opinion. We otherwise affirm the judgment.

So ordered.

---

[21] Friedman also challenges the judges' failure to act on (and thus in practical effect deny) his motions to expedite the Superior Court proceeding. The Superior Court is obligated to expedite the proceeding "when feasible." G. L. c. 66, § 10A (d) (1) (iii). Here, after two hearings (one scheduling conference and one motion hearing) and resolution of the motion to dismiss, final judgment entered within approximately six months of the filing of the complaint. We are satisfied that the judges acted expeditiously and we discern no error in their handling of the motions to expedite.